A. Earl BELL, John E. Christian, Ben Z. Klatch, for and in behalf of themselves and Lyle F. Albright, Gunnar Kullerud, Wilton N. Melhorn, Millard P. Plumlee, Jr., and all others similarly situated, Lyle F. Albright, Walter Hirsch, Merwin Moskowitz, and Raymond L. Morter, Plaintiffs,

v.

The TRUSTEES OF PURDUE UNIVERSITY, Purdue University, Defendants.

No. L 86–64.

United States District Court,
N.D. Indiana,
Hammond Division.

April 10, 1987.

As Corrected April 15, 1987.

Loretta H. Rush, Lafayette, Ind., Raymond C. Fay, Thomas R. Gibbon, Washington D.C., Alan M. Serwer, Chicago, Ill., for plaintiffs.

John F. Bodle, John C. Duffey, Lafayette, Ind., for defendants.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

### I.

This case is before the court on defendants', The Trustees of Purdue University and Purdue University (collectively Purdue), Motion to Dismiss filed on December 1, 1986. That motion is premised upon Rule 12(b)(6) of the Federal Rules of Civil Procedure. The plaintiffs filed a memorandum in opposition to Purdue's motion on January 4, 1987; on the same day, Purdue filed a supplemental brief in support of their motion. In addition, on January 7, 1987, while the court was hearing oral argument, Purdue filed a "Response to Plaintiffs' January 5, 1987 filings." On January 16, 1987, Purdue filed a supplemental brief; the plaintiff also filed a supplemental memorandum in opposition to Purdue's motion to dismiss on January 20, 1987. Both parties, on March 17, 1987, filed memoranda addressing Judge Harrold Greene's opinion

in *AARP v. EEOC*, 655 F.Supp. 228 (D.D.C. 1987); the plaintiffs filed further supplementation on March 30, 1987. This matter is now ripe for decision.

## II.

Although a motion for summary judgment filed by Purdue on June 3, 1986, is pending, the court chooses to decide solely the motion to dismiss pursuant to Rule 12(b)(6). Therefore, the court excludes from consideration everything outside the pleadings. Those pleadings reveal the pertinent facts, relevant to the motion to dismiss which the court assumes to be true. At all relevant times, each plaintiff was an individual employee of Purdue who was at least 40 but less than 70 years of age. The plaintiffs were participants in the Teachers Insurance Annuity Association Retirement System of Purdue University (TIAA–CREF Plan). The "normal retirement age" under the TIAA–CREF Plan is 65 for those participants whose appointment was on or after July 1, 1948, and age 66 for those participants whose appointment was before July 1, 1948. Further, plaintiffs are either employed by Purdue beyond normal retirement age or if they have not reached normal retirement age, intend to be so employed. Up to the end of the fiscal or academic year in which the participant reaches normal retirement age, Purdue contributes to the TIAA–CREF Plan on behalf of each participant. However, the TIAA–CREF Plan precludes the employer from contributing to the plan subsequent to the employee's attainment of the normal retirement age contained in the plan.

## III.

The court in analyzing a motion to dismiss utilizes the standards established by the Supreme Court of the United States in *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). *Hishon v. King & Spaulding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). The Supreme Court in *Conley* held that:

In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed ... unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.

*Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *accord Hishon*, 467 U.S. at 73, 104 S.Ct. at 2232; *Vaden v. Village of Maywood, Illinois*, 809 F.2d 361, 363 (7th Cir.1987); *Miniat, Inc. v. Globe Life Ins. Group, Inc.*, 805 F.2d 732, 735 (7th Cir.1986); *Morgan v. Bank of Waukegan*, 804 F.2d 970, 973 (7th Cir. 1986). In addition, "we must accept as true all well-pleaded factual allegations in the complaint." *Vaden*, 809 F.2d at 363; *Doe on behalf of Doe v. St. Joseph's Hospital of Fort Wayne*, 788 F.2d 411, 414 (7th Cir.1986); *Ellsworth v. City of Racine*, 774 F.2d 182, 184 (7th Cir.1985), *cert. denied*, — U.S. —, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986). Further "pleadings are to be liberally construed and mere vagueness or lack of detail does not constitute sufficient grounds for a motion to dismiss." *Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir.1985); *accord, Doe on behalf of Doe v. St. Joseph Hospital of Fort Wayne*, 788 F.2d at 414. "A complaint must state either direct or inferential allegations concerning all of the material elements necessary for recovery under the relevant legal theory" *Carl Sandberg Village Condominium Ass'n v. First Condominium Development Co.*, 758 F.2d 203, 207 (7th Cir. 1985), citing, *Sutliff v. Donovan*, 727 F.2d 648, 654 (7th Cir.1984). It is under those standards that the Court proceeds to analyze Purdue's motion to dismiss.

## IV.

In 1967 Congress took a significant step in preventing discrimination based upon age, and passed the Age Discrimination in Employment Act of 1967 (ADEA). In the Senate, Senator Jacob Javits sponsored S. 830 which eventually became the ADEA, in the House of Representatives, Representative Hawkins sponsored H.R. 13054. The Senate Bill was passed in lieu of the House Bill after substituting for its language the text of the House Bill. H.R. Rep. No. 805, 90th Cong. 1st Sess. reprinted in 2 U.S.Code Cong. & Admin.News

2213 (1967). Section 4(f)(2) of the Bill reads:

> (f) It shall not be unlawful for an employer, employment agency, or labor organization—
>
> (2) to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension or insurance plan, which is not a subterfuge to evade the purposes of this Act, except that no benefit plan shall excuse the failure to hire any individual ...

See, 113 Cong.Rec. S. 35054 (daily ed. December 5, 1967); 113 Cong.Rec. H. 34739 (daily ed. December 4, 1967). The ADEA included that language. See, 29 U.S.C. § 623(f)(2) (1970). That language is ambiguous when the issue is whether an employer may decline to contribute to a defined contribution or defined benefit plan after an employee who reaches normal retirement age, under the benefit plan, continues to work. If the language of a statute is ambigious a court may look to the legislative history to interpret the statute. *Blum v. Stenson*, 465 U.S. 886, 896, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984); *In re: McVey Trucking, Inc.*, 812 F.2d 311 (7th Cir.1987); *Kelly v. Wauconda Park Dist.*, 801 F.2d 269, 270 (7th Cir.1986).

The legislative history of the ADEA contained in volume 113 of the Congressional Record and House Report No. 805, *supra*, provides an understanding of the original language of Section 4(f)(2), and Congress' intent. The "exceptions [in Section 4(f)(2) ] are provided in order not to disrupt employee benefit programs, seniority systems, and the like." 113 Cong.Rec. H. 34740 (daily ed. December 4, 1967) (statement of Rep. Perkins). Representative Smith criticized the bill because:

> The report states:
>
> This exception serves to emphasize the primary purpose of the bill—hiring older workers—by permitting employment without necessarily including such workers in employee benefit plans.

113 Cong.Rec. H. 34745 (daily ed. December 4, (1967). Further, "[T]here is no provision for a worker in the 40 to 65 range, to participate in some of the pension or retirement programs available to his fellow workers." 113 Cong.Rec. H. 34750 (daily ed. December 4, 1967) (statement of Rep. Randall). Senator Javits explained to the Senate that:

> The amendment relating to seniority systems and employee benefit plans is particularly significant: because of it an employer will not be compelled to afford older workers exactly the same pension, retirement, or insurance benefits as younger workers and thus employers will not, because of the often extremely high cost of providing certain types of benefits to older workers.

113 Cong.Rec. S. 31254–31255 (daily ed. November 6, 1967). Additional support for Senator Javits' interpretation is found in the section analysis of the House Report which accompanied the bill and analyzed Section 4(f)(2) as follows:

> It also provides that it will not be unlawful to observe the terms of a bona fide seniority system or any bona fide employee benefit plan, except no employee benefit plan may excuse the failure to hire an individual.

H.R.Rep. N. 805, 90th Cong. 1st Sess. reprinted in 2 U.S.Code Cong. & Admin. News, 2213, 2222 (1967). However, Congress did not expect this bill to "be the final or only answer to this problem. But it will be a big step." 113 Cong.Rec. H 34744 (daily ed. December 4, 1967) (statement of Rep. Pucinski).

Representative Pucinski's prophecy came true in 1978. In 1977, Congress began work on some amendments to the ADEA. The amendments had three goals. First, they expanded coverage in the private sector from 65 years to 70 years; second, they eliminated mandatory retirement in the Federal sector; and third, they invalidated provisions in pension plans and retirement systems which mandate involuntary retirement during the protected age. S.Rep. No. 95–493, 95th Cong. 2d Sess., reprinted in 3 U.S.Code Cong. & Admin.News 504 (1978); 123 Cong.Rec. H. 29002 and 29013 (daily ed. September 13, 1977) (statements of Rep. Hawkins and Rep. Weiss). The third

goal is pertinent to the issue before this court.

The language of the amendment to Section 4(f)(2) was inserted after the word "individual" and reads as follows:

and except that the involuntary retirement of any employee shall not be required or permitted by any such employee benefit plan because of the age of such employee.

123 Cong.Rec. H. 30544 (daily ed. September 23, 1977); 123 Cong.Rec. S. 34293 (daily ed. October 19, 1977). Congress expressly included the third goal in response to court interpretations of Section 4(f)(2). During the debate on the proposed amendments to the ADEA the cosponsors in both the House of Representatives and the Senate said that the amendments were an express rejection of the Supreme Court of the United States' interpretation of Section 4(f)(2) announced in *United Air Lines v. McMann*, 434 U.S. 192, 98 S.Ct. 444, 54 L.Ed.2d 402 (1977). *See*, 124 Cong.Rec. S. 8217 and 8218 (daily ed. March 23, 1978) (statements of Sen. Williams and Sen. Javits); 124 Cong.Rec. H. 7881 and 7888 (daily ed. March 21, 1978) (statements of Rep. Hawkins and Rep. Waxman). In *McMann* the Court held that the Section 4(f)(2) exception applied to pension or benefit plans which required mandatory retirement within the protected age group. *United Air Lines v. McMann*, 434 U.S. 192, 98 S.Ct. 444, 54 L.Ed.2d 402 (1977). Congress adopted the proposed amendment and added the language to Section 4(f)(2). *See*, 29 U.S.C. § 623(f)(2) (1980). Congress' intent was that this amendment "clarified the 4(f)(2) bona fide employee benefit plan exception so that pension plans would not require the forced early retirement of employees." 123 Cong.Rec. S. 34297 (daily ed. October 19, 1977) (statement of Sen. Javits). Nevertheless, the additional language does not clarify any ambiguity when the issue is whether an employer may decline to contribute to a defined contribution or defined benefit plan after an employee who reaches normal retirement age, under the benefit plan, continues to work. Therefore, to interpret the meaning and intent of Congress the court will look to the legislative history. *Accord, Blum v. Stenson*, 465 U.S. 886, 896, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984).

Congress was cognizant that the ADEA was not intended to provide absolute equality for older workers immediately:

Changes in mandatory retirement would have profound economic and social consequences for pensions, retirement plans and the social security program. As a result, full-scale changes in the patterns of work and retirement would not be realistic until short and long term adjustments can be made in these programs to accommodate the effects of eliminating the upper age limit in employment.

123 Cong.Rec. H. 29011 (daily ed. September 13, 1977) (statement of Rep. Cohen). Representative Cohen was "particularly pleased that [the] bill seeks to clarify the section of ADEA which provides an exception 'to observe the terms of a bona fide employee benefit plan.'" *Id.* Further, "The bill before [the Congress] recognizes the need to phase in and evaluate the impacts this policy change has on the labor market." *Id.* Congress recognized that "the ADEA's purpose was to promote employment not retirement, whether with or without a pension." *Id.*

During debate, on September 23, 1977, in the House of Representatives the representatives were reminded that "Senator Jacob Javits, one of the original authors of the legislation stated his intention 'that a fairly broad exception be provided for bona fide retirement and seniority systems that will facilitate hiring rather than deter it and make it possible for older workers to be employed without the necessity of disrupting those (benefit) systems.'" 123 Cong.Rec. H. 30566 (daily ed. September 23, 1977) (statements of Rep. Weiss). The floor manager of the bill, Senator Ralph Yarborough, made the following observation about Section 4(f)(2):

... this will not deny any individual employment or prospective employment but will limit his rights to obtain full consideration in the pension, retirement, or insurance plan.

*Id.*

Senator Williams, a sponsor of the bill, on October 19, 1977, said "[i]t was feared

that employers would be required to credit years of service for the purpose of benefit accrual after the normal retirement age specified in a pension plan for those workers who continued working after age 65. The Department [of Labor] has assured us in a letter ... nothing in the ADEA requires such accrual." 123 Cong.Rec. S. 34295 (daily ed. October 19, 1977).

The intent of Congress specifically as it applies to the issue before the court was expressed in a colloquy between Representative Hawkins and Representative Dent, both sponsors of the proposed amendments. The colloquy which occurred on March 21, 1978, said:

> Mr. Dent. Mr. Speaker, in order that there be no question about the committee handling of pension legislation, I have arranged with the gentleman from California [Rep. Hawkins] to make the record very clear. I would like to put this question to the gentleman:

> > Is it the intention of the conferees that an employer will be permitted, under the Age Discrimination in Employment Act of 1967 as amended, to maintain a defined contribution plan—other than a plan which is merely supplemental to a defined contribution plan maintained by the employer—which precludes employer and, if applicable employee contributions to such a plan subsequent to an employee's attainment of the normal retirement age contained in the plan?

> Mr. Hawkins. Yes. The answer to the gentleman's question is "Yes." The conferees intend that an employer will not violate the Age Discrimination in Employment Act by maintaining such a defined contribution plan. This position is in keeping with the general view of the House and the Department of Labor with regard to prohibited age discrimination in the context of pension plans covering employees who continue employment beyond the normal retirement age, as expressed in a letter of September 8, 1977, from Assistant Secretary Elisburg to me which appears in the CONGRESSIONAL RECORD of September 23, 1977, at page 30564.

124 Cong.Rec. H. 7881–7882 (daily ed. 1978) (statements of Rep. Dent and Rep. Hawkins).

In this case the plaintiffs allege that Purdue is doing exactly what Representative Hawkins affirmatively stated that Congress intended employers to be permitted to do under the original and amended versions of Section 4(f)(2).

Both parties presented arguments regarding recent amendments to Section 4. The specific amendment which addresses the issue before this court adds subsection (i) to Section 4 of the ADEA. The proposed additional language includes in pertinent part:

> (i)(1) Except as otherwise provided in this subsection, it shall be unlawful for an employer, an employment agency, a labor organization, or any combination thereof to establish or maintain an employee pension benefit plan which requires or permits (A) in the case of a defined benefit plan, the cessation of an employee's benefit accrual, or the reduction of the rate of an employee's benefit accrual, because of age, or

> (b) in the case of a defined contribution, the cessation of allocations to an employee's account, or the reduction of the rate at which amounts are allocated to an employee's account, because of age.

> \* \* \* \* \* \*

> (1) In general.—The amendments made by sections 9201 and 9202 shall apply only with respect to plan years beginning on or after January 1, 1988, and only to employees who have 1 hour of service in any plan year to which such amendments apply.

P.L. 99–509 § 9201, 99th Cong. 2d Sess. reprinted in 10 U.S.Code Cong. & Admin. News (October 21, 1986). The conferees offering the proposed amendments expressly stated that the amendments should not be used to infer "whether or to what extent employee benefit plans might have been required to provide benefit accruals or allocations to employees' accounts for employees protected under ADEA prior to the effective date of section 4(i) which is Janu-

ary 1, 1988." 132 Cong.Rec. H. 11424 (daily ed. October 17, 1986). Representative Clay, Chairman of the Subcommittee of Labor Management Relations, said "[g]enuine disagreement exists as to whether, under current law, additional pension accruals or allocations were required. My subcommittee heard testimony last year on this subject and was convinced that congressional action was needed to provide prospective guidance to employers." 132 Cong.Rec. H. 11457 (daily ed. October 17, 1986) (statement of Rep. Clay). These amendments enabled "[t]wo more barriers to older Americans getting the pensions they deserve [to fall] today." 132 Cong. Rec. H. 11457 (daily ed. October 17, 1986) (statement of Rep. Hawkins). The first barrier and the one pertinent to the issues before this court is that "employers [sic] who work beyond normal retirement age will continue earning pension credit. The provisions in the conference agreement which prohibits employers from stopping benefit accrual or pension contributions for any employee on the basis of age are a significant step forward in our efforts to stamp out age discrimination." 132 Cong. Rec. H. 11457 (daily ed. October 17, 1986) (statement of Rep. Hawkins). In accordance with the conferees express statement, the court does not make any inference related to the language of the amendments.

Both parties have submitted supplemental briefs addressing the opinion in *AARP v. EEOC*. That opinion addressed a challenge to the delay in rulemaking which the EEOC had not begun. That opinion did not address a specific interpretation of Section 4(f)(2) nor an analysis of the legislative history. That opinion is not controlling or persuasive here.

### V.

The analysis of the legislative history and statutory language illustrates that Congress intended employers with a bona fide employee benefit plan to be able to preclude an employer from contributing to the plan subsequent to the employee's attainment of the normal retirement age contained in the plan. After liberally construing the complaint and accepting as true all well-pleaded factual allegations in the complaint it is clear that the complaint fails to state a claim that would entitle these plaintiffs to relief. Therefore, Purdue's motion to dismiss is granted.

Accordingly, and for all the above reasons, it is the ORDER of the Court that the defendants', The Trustees of Purdue University and Purdue University, Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure be, and is hereby GRANTED. Costs assessed against the plaintiffs.

SO ORDERED.