**A. Earl BELL et al., Plaintiffs,**

**v.**

**TRUSTEES OF PURDUE UNIVERSITY and Purdue University, Defendants.**

**Civ. No. L86–64.**

United States District Court,
N.D. Indiana,
Hammond Division,
at Lafayette.

April 2, 1991.

Loretta H. Rush, Lafayette, Ind., Raymond C. Fay and Thomas R. Gibbon, Washington, D.C., Alan M. Serwer, Chicago, Ill., for plaintiffs.

John F. Bodle and John C. Duffey, Lafayette, Ind., for defendants.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

ALLEN SHARP, Chief Judge.

This case revisits the district court on defendants' pending motion for summary judgment. The early history of this case begins with the court's published decision in *Bell v. Trustees of Purdue University*, 658 F.Supp. 184 (N.D.Ind.1987). There, the court granted defendants' motion to dismiss under Fed.R.Civ.P. 12(b)(6), holding that "the complaint fails to state a claim that would entitle these plaintiffs to relief." *Id.* at 189. Plaintiffs appealed that judgment, and the Seventh Circuit reversed and remanded the case for trial in an unpublished order, 845 F.2d 1023, which is marked Appendix "A" and attached hereto. The remand order relied on a decision of the Seventh Circuit, *Karlen v. City Colleges of Chicago*, 837 F.2d 314 (7th Cir. 1988), *cert. denied*, 486 U.S. 1044, 108 S.Ct. 2038, 100 L.Ed.2d 622 issued during the pendency of plaintiffs' appeal.

*Karlen* held that a genuine issue of material fact existed (thus precluding summary judgment) as to whether challenged provisions in a retirement program were a subterfuge for discrimination. To negate a subterfuge allegation, and thus insulate an employer from liability, *Karlen* required an employer to establish that age-based cost justifications explained the variation in retirement benefits. Invoking *Karlen*, the Seventh Circuit reversed and remanded this court's decision on the motion to dismiss, and held that "the plaintiffs may [be able to] prove sufficient facts in support of their claim which would entitle them to relief." Unpublished Order at 2.

Following the remand order, the Supreme Court of the United States decided *Public Employees Retirement System of Ohio v. Betts*, 492 U.S. 158, 109 S.Ct. 2854, 106 L.Ed.2d 134 (1989). *Betts* rejected the prevailing view, embodied in *Karlen*, that a charge of subterfuge could be negated only by demonstrating that age-based reductions in benefits are justified by age-related cost considerations. *Betts* also characterized § 4(f)(2) as an element of a plaintiff's *prima facie* case, not an affirmative defense to a plaintiff's charge of age discrimination. In so holding, the Supreme Court overruled key aspects of the *Karlen* decision which served as the basis for the Seventh Circuit's remand order.

A year after *Betts* was decided the President signed into law the Older Workers Benefit Protection Act (OWBPA), Pub. L.No. 101-433, 104 Stat. 978 (Oct. 16, 1990), which amended the ADEA by overturning important aspects of the *Betts* decision. Congress determined that legislative action was necessary to remedy the Supreme Court's mistaken interpretation of the ADEA in *Betts*. Congress specifically stated that its "original ... intent in passing and [later] amending the [ADEA] ... was to prohibit discrimination against older workers in all employees benefits, *except when age-based reductions in employee benefit plans are justified by significant cost considerations*" (emphasis added). OWBPA at § 101.

Significantly (for purposes of this litigation), the OWBPA provides that its provisions shall operate prospectively only. In accord, the plaintiffs have conceded that the statute does not have retroactive application to this case. Purdue now moves for summary judgment claiming that *Betts* provides the appropriate rule of law and dispositively settles these issues in their favor.

The plaintiffs have engaged in extensive discovery, including depositions of past and present Purdue University presidents, Dr. Arthur G. Hansen and Dr. Steven Beering, respectively. All such depositions have

been filed, published and are now before the court.

### I.

The relevant facts can be briefly summarized. The plaintiffs are (or were, at relevant times) employees of Purdue University. They bring this action against the defendant university and its trustees (collectively, "Purdue") alleging a violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. § 621 *et seq.* Plaintiffs participate(d) in Purdue's Teachers Insurance and Annuity Association Retirement System ("TIAA–CREF Plan" or "Plan"), a defined-contribution pension plan for the benefit of Purdue employees. Since 1937 Purdue has made pension contributions to the TIAA–CREF Plan on behalf of its employees.

Under the current terms of the TIAA–CREF Plan, Purdue contributes on behalf of each Plan participant an amount equal to 11 percent of a participant's basic budgeted annual salary, up to $9,000, and 15 percent of the basic budgeted annual salary in excess of $9,000. During the period of which plaintiffs complain—July 1, 1982 to January 1, 1988—Purdue discontinued such contributions at the end of the fiscal or academic year in which the participant reached "normal retirement age," even if the participant thereafter remained employed with the university. According to the Plan, the "normal retirement age" is age 65 for participants whose appointment occurred on or after July 1, 1948, and age 66 for those appointed before July 1, 1948. Plaintiffs allege Purdue's practice constituted a violation of the ADEA.

A pair of changes in federal law prior to the commencement of this lawsuit caused Purdue to alter the terms of its Plan accordingly. In 1978 Congress amended the ADEA to raise the retirement age to 70 years of age. This statutory change became effective as to tenured faculty members, on July 1, 1982; and on January 1, 1979, for members of the administrative and professional staffs and for faculty without tenure. Congress again amended the ADEA in 1986 to provide that an employer could not discontinue pension contributions until the participant retired. This statutory modification took effect on January 1, 1988, and ensured that employees above the "normal retirement age" would continue to have pension contributions made on their behalf. The parties do not dispute that Purdue has changed its TIAA–CREF Plan to comply with the ADEA revisions, so that now Purdue continues employee contributions even after a participant reaches age 65.

### II.

Prior to the effective date of the 1986 amendments, plaintiffs filed their complaint charging that Purdue violated the Age Discrimination in Employment Act of 1967. The gravamen of plaintiffs' complaint is that Purdue's policy between July 1, 1982 and January 1, 1988 of discontinuing the pension benefits of employees who had reached "normal retirement age" amounted to a violation of sections 4(a)(1) and 4(a)(2) of the ADEA, 29 U.S.C. §§ 623(a)(1), (a)(2). Under these sections it is unlawful for an employer

(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;

(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age....

29 U.S.C. §§ 623(a)(1) and (a)(2).

Notwithstanding these general prohibitions, section 4(f)(2) provides that an employer does not violate the ADEA when it

observe[s] the terms of ... any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this chapter....

29 U.S.C. § 623(f)(2).

Purdue maintains that the plaintiffs cannot succeed on their ADEA claim as a matter of law because its challenged con-

duct between July 1982 and January 1988 is immunized by the broad interpretation given the § 4(f)(2) exemption in *Betts.* Purdue seeks refuge from liability by claiming it faithfully observed the terms of a bona fide pension plan, which was not a subterfuge to evade nonfringe-benefit aspects of the employment relationship.

The plaintiffs respond, first, that *Betts* should not be retroactively applied to this case in which the contested conduct occurred well before *Betts* was decided. Second, plaintiffs contend that, no matter what the applicable rule of law, Purdue is not entitled to summary judgment because: (1) Purdue's TIAA–CREF Plan is not the type of "plan" exempted under § 4(f)(2); (2) Purdue's contributions to the TIAA–CREF Plan are in the nature of basic compensation rather than fringe benefits, meaning that § 4(f)(2) does not even apply; and (3) there remains a genuine issue of material fact on the questions (i) whether the age-based cutoff of pension contributions was for the purpose of discouraging the employment of faculty and administrative staff beyond age 65 and otherwise adversely affecting their employment relationship with Purdue on the basis of age and (ii) whether the reasons given by Purdue for the cutoff of Plan contributions at age 65 are mere pretexts for unlawful age discrimination.

The court first considers the retroactivity of the *Betts* decision; then, applying the appropriate legal standard, the court evaluates Purdue's motion for summary judgment.

### III.

■ It is clear that judicial doctrines normally are applied retroactively. *McKnight v. General Motors Corp.,* 908 F.2d 104, 110 (7th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1306, 113 L.Ed.2d 241 (1991). The Supreme Court has held that "[t]he usual rule is that federal cases should be decided in accordance with the law existing at the time of decision." *Saint Francis College v. Al–Khazraji,* 481 U.S. 604, 608, 107 S.Ct. 2022, 2025, 95 L.Ed.2d 582 (1987). Given that OWBPA by its terms does not apply to pre-enactment events, it cannot be disputed under these facts that *Betts* is the applicable "law existing at the time of [this] decision." The question that remains, then, is whether some exception to the general rule—militating against retroactive application of *Betts*—should control the issues presented in this case.

Plaintiffs urge that this case represents such an instance in which the standards set forth in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), counsel against retroactive application of *Betts.* They claim that Purdue's conduct, which occurred prior to *Betts,* should not be judged under the standards announced in *Betts.*

■ *Chevron* instructs a court to consider three factors in determining whether to apply a decision retroactively: (1) the decision at issue overrules clear precedent on which litigants may have relied or addresses an issue of first impression which was not foreshadowed; (2) retroactive application of the decision would retard the operation of a federal statute; and (3) retroactive application would result in substantial inequity. *Smith v. Firestone Tire and Rubber Co.,* 875 F.2d 1325, 1326 (7th Cir. 1989), citing *Chevron,* 404 U.S. at 106–07, 92 S.Ct. at 355–56.

Before applying the *Chevron* factors to this case, the court takes a brief detour to note a Supreme Court decision issued last term. In *American Trucking Associations, Inc. v. Smith,* —— U.S. ——, 110 S.Ct. 2323, 110 L.Ed.2d 148 (1990), a four-justice plurality employed *Chevron* in determining whether to apply retroactively one of the Court's recent decisions on the commerce clause. The *Smith* decision is potentially significant because five justices seemed to oppose the use of *Chevron* outside the context of statutes of limitations. Justice Scalia, concurring in the judgment only, appeared to reject *Chevron* entirely. *Id.,* 110 S.Ct. at 2343. ("[P]rospective decisionmaking is incompatible with the judicial role, which is to say what the law is, not to prescribe what it shall be."). Writing in dissent, Justice Stevens was joined by

three others (including now-retired Justice Brennan) in holding that "*Chevron Oil* and its progeny ... establish a remedial principle for the exercise of equitable discretion by federal courts and not, as the plurality states, a choice of law principle applicable to all cases on direct review." *Id.* at 2353. Justice Stevens noted: "[*Chevron*] counsel[ed] against retroactive application *of statute of limitations decisions* in certain circumstances." (emphasis added by Stevens) *Id.* at 2354, quoting *Saint Francis College*, 481 U.S. at 608, 107 S.Ct. at 2025.

Notwithstanding the *Smith* dicta, the Seventh Circuit just last year employed *Chevron* in considering whether to apply retroactively a non-statute-of-limitations decision. In *McKnight*, 908 F.2d 104, Judge Posner wrote for a three-judge panel of the Seventh Circuit that the Supreme Court's decision in *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) (construing 42 U.S.C. § 1981), "should be [retroactively] applied to cases ... that had not become final before *Patterson* was decided...." *McKnight*, 908 F.2d at 110.

In addition to Judge Posner's ruling, a very recent decision of this Circuit, *Harris v. City of Zion, Lake County, Illinois*, 927 F.2d 1401 (7th Cir.1991), rebukes Judge Easterbrook in dissent who "count[ed] justices" and concluded that, with Justice Brennan's departure from the Court, a recent 5–4 decision of the Supreme Court is "shaky at best." *Id.* at 1411 n. 10.

■ This court understands the cited pair of Seventh Circuit cases to require that the humble obligation of a district court is merely to apply the law in its current state (in this case, to apply *Chevron* even to non-statute-of-limitations decisions). District courts are thus spared the burden of speculating on what course the Supreme Court may steer its future decisions in this area. That task lies instead with pilots in the federal judiciary whose view of the legal landscape is taken from an altitude higher than this court's. The court thus proceeds to consider *Chevron* under these facts.

The first *Chevron* inquiry is whether *Betts* establishes a new principle of law, either by overruling clear past precedent on which litigants may have relied or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Plaintiffs urge this court to recognize that "*Betts* clearly established a new principle of law by transforming what had been an affirmative defense into an element of an employee's *prima facie* case." *Mitchell v. Mobil Oil Corp.*, 896 F.2d 463, 470 (10th Cir.1990), *cert. denied*, — U.S. ——, 111 S.Ct. 252, 112 L.Ed.2d 210.

It is certainly true that *Betts* reshaped the law under § 4(f)(2) in some significant respects, and in the process overturned settled decisions in this circuit. For instance, in rejecting the cost-justification requirement, *Betts* held that an employee who challenges a benefit plan provision as a subterfuge bears the burden of proving that the provision "actually was intended to serve the purpose of discriminating in some nonfringe-benefit aspect of the employment relation." *Betts*, 109 S.Ct. at 2868.

It is also true, however, that *Betts* merely reaffirmed the Court's earlier holding in *United Air Lines, Inc. v. McMann*, 434 U.S. 192, 98 S.Ct. 444, 54 L.Ed.2d 402 (1977), that "'subterfuge' means 'a scheme, plan, stratagem, or artifice of evasion,' which, in the context of § 4(f)(2), connotes a specific 'intent ... to evade a statutory requirement,'" *Betts*, 109 S.Ct. at 2863, quoting *McMann*, 434 U.S. at 203, 98 S.Ct. 450. *Betts* also reiterated that an employee benefit plan adopted prior to the enactment of ADEA cannot be a subterfuge, *Betts*, 109 S.Ct. at 2861, citing *McMann*, 434 U.S. at 203, 98 S.Ct. at 450.

■ On balance, this court is not persuaded that retroactive application of *Betts* would cause these plaintiffs "manifest injustice" or inflict "substantial inequitable results" under the third *Chevron* factor. The court agrees with plaintiffs that under *Betts* an employee would be entitled to

relief under the ADEA where his employer intentionally crafted a fringe benefit plan amounting to a subterfuge to evade the purposes of the act. It is not only since the *Betts* decision, however, that such an employee would be entitled to relief. An essential aim of the ADEA since its inception has been to prohibit intentional discrimination and subterfuge. At this pre-trial stage in the litigation, the court cannot agree with plaintiffs that "it would work a grave injustice ... to hold that *Betts* applies [to this case] retroactively." *Mitchell*, 896 F.2d at 471.

In support of their position that *Betts* should not apply to these facts, plaintiffs rely almost exclusively on the Tenth Circuit's *Mitchell* decision. Their reliance is understandable, for *Mitchell* appears to be the only post-*Betts* decision refusing to apply *Betts* retroactively. The court finds that *Mitchell* does not apply here because it is distinguishable in three important respects. First, the plaintiff in *Mitchell* tried his case under pre-*Betts* standards. The Tenth Circuit held that retroactive application of *Betts* in that case would effectively insulate the employer from liability since the plaintiff never presented as part of his *prima facie* case any evidence that the defendant intended to discriminate in some nonfringe-benefit aspect of the employment relationship. Here, the plaintiffs will in no way be foreclosed at trial from presenting their evidence of Purdue's alleged subterfuge to discourage post-age 65 employment or to otherwise adversely affect the employment relationship of its post-age 65 employees. Second, the defendant in *Mitchell* never relied on the § 4(f)(2) defense until after trial at the appellate stage, despite the availability of the defense even pre-*Betts*. Here, by contrast, Purdue first raised § 4(f)(2) as an affirmative defense in its amended answer filed *before* the Supreme Court decided *Betts*, in which the Court changed the respective burdens of production in this area. Third, the *Mitchell* court itself acknowledged that its facts were distinguishable from a Ninth

Circuit decision, *Robinson v. County of Fresno*, 882 F.2d 444 (9th Cir.1989), holding that *Betts* should be retroactively applied. In a footnote, the Tenth Circuit stated: "[S]ince *Robinson* was only at the summary judgment stage at the time *Betts* was decided, applying *Betts* retroactively would not result in the high degree of injustice which retroactive application would cause in this case." *Mitchell*, 896 F.2d at 471 n. 3. Because this case too is only at the summary judgment stage, and in light of the other factors mentioned above, the court concludes that Purdue's motion for summary judgment should be judged under the standards announced in *Betts*.

### IV.

■ At last, the court evaluates the merits of Purdue's motion for summary judgment. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists if there is "sufficient evidence favoring the nonmoving party for a [reasonable] jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *See also La-Preferida v. Cerveceria Modelo, S.A. de C.V.*, 914 F.2d 900, 905 (7th Cir.1990). The movant bears the burden of establishing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Becker v. Tenenbaum-Hill Associates, Inc.*, 914 F.2d 107, 110 (7th Cir.1990). The movant may meet its burden by showing that "there is an absence of evidence to support the nonmoving party's case." *Id.*, quoting *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2554. Any doubt regarding the existence of a genuine issue of material fact must be resolved in favor of the nonmovant. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.

If the moving party meets its burden, the nonmovant then must present specific facts showing that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Co.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The nonmovant cannot rest on mere allegations without significant probative evidence in support of his claim. Accordingly, the nonmovant is required to go beyond the pleadings, affidavits, depositions, answers to interrogatories and admissions on file to designate specific facts showing a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553.

Purdue seeks to satisfy its burden on summary judgment by demonstrating an absence of evidence to support the plaintiffs' case. Invoking the standards under *Betts*, Purdue claims that plaintiffs have not, and cannot, present evidence that Purdue's cessation of TIAA/CREF contributions (between 1982 and 1988) after normal retirement age was a subterfuge "intended to serve the purpose of discriminating in some nonfringe-benefit aspect of the employment relation." *Betts*, 109 S.Ct. at 2868.

Plaintiffs respond that there remain genuine issues of material fact on the questions (i) whether the age-based cutoff of pension contributions was for the purpose of discouraging the employment of faculty and administrative staff beyond age 65 and otherwise adversely affecting their employment relationship with Purdue on the basis of age and (ii) whether the reasons given by Purdue for the cutoff of Plan contributions at age 65 are mere pretexts for unlawful age discrimination.

Plaintiffs refer to "numerous facts" in support of their contention that Purdue, in discontinuing pension contributions on the basis of age alone, "was ... utilizing its benefits plan as a subterfuge for age-based discrimination in wages, an activity forbidden by § 4(a)(1)." *Id.* The essence of plaintiffs' charge is that Purdue wanted to discourage (or eliminate) post-age 65 employment among the faculty, whether to reduce costs because of budget constraints and/or to infuse the faculty with so-called "new blood." [1]

It was not until Purdue amended the TIAA–CREF Plan in 1978 [2] that the university ceased contributions for participants who were employed beyond the normal retirement age (Beltz Exh. 1; Beltz Dep. at 55–58, 99). Prior to the amendment, employees continued to receive pension contributions from Purdue until they actually retired. Plaintiffs urge that the timing of this amendment was no accident. They maintain it "came hard on the heels" of the 1978 ADEA amendments raising the minimum mandatory retirement age to 70 for tenured faculty—which the university "vigorously opposed" (Pl.Opp. to S.J. at 18)—because (according to plaintiffs) Purdue wanted to continue to rely on the attrition caused by mandatory retirement.

After reviewing all of the materials submitted by the parties, the court cannot conclude as a matter of law that a reasonable jury could not infer from these facts (and their timing) that Purdue "utiliz[ed] its pension plan as a subterfuge for age-based discrimination in wages," *Betts*, 109 S.Ct. at 2868, to discourage post-age 65 employment among the faculty. The plaintiffs' evidence on this point offers more than mere conjecture or speculation. Accordingly, Purdue's motion for summary judgment is DENIED.

SO ORDERED.

---

1. There is deposition testimony from key Purdue officials, including the former university president, that it is the "younger faculty [who] are ... up-to-date on the most recent areas of research. They're the ones most familiar with the new concepts, and consequently, they're the people that take the university ... [to] its leading edge" (Hansen Dep. at 14–15).

2. *After* the enactment of ADEA in 1967. Accordingly, Purdue is not entitled to a holding that the relevant plan amendment is *per se* not a "subterfuge" under the Act. *See Betts*, 109 S.Ct. at 2861–62.

APPENDIX A

United States Court of Appeals

For the Seventh Circuit

No. 87–2146

Argued April 4, 1988

April 25, 1988.
UNPUBLISHED ORDER

NOT TO BE CITED

PER CIRCUIT RULE 53

Before

Hon. WILLIAM J. BAUER, Chief Judge

Hon. WALTER J. CUMMINGS,
Circuit Judge

Hon. JOHN L. COFFEY, Circuit Judge

A. Earl Bell, et al., Plaintiffs–Appellants,

vs.

The Trustees of Purdue University, and
Purdue University,
Defendants–Appellees.

Appeal from the United States District
Court for the Northern District of
Indiana, Hammond Division.

No. L86–0064

Allen Sharp, Chief Judge.

ORDER

In *Karlen v. City Colleges of Chicago*, 837 F.2d 314 (7th Cir.1988), three professors brought suit under the Age Discrimination in Employment Act, 29 U.S.C. § 626, complaining that the Early Retirement Program of the City Colleges of Chicago, adopted in 1982 as part of a collective bargaining agreement with a local union of the American Federation of Teachers, discriminated against persons over age 65. The district court entered summary judgment in favor of the college, and the professors appealed. In reversing and remanding for trial, this Court held that a genuine issue of material fact existed as to whether the challenged provisions in retirement program, pursuant to which there was decline in accumulated sick pay benefits and loss of insurance benefits available to faculty members who did not retire by age 64, were a subterfuge for discrimination. 837 F.2d at 320.

The present case provides an analogous situation meriting similar treatment. On April 10, 1987, the district court, without the benefit of *Karlen*, dismissed the plaintiffs' complaint pursuant to Rule 12(b)(6), Fed.R.Civ.P. [*Bell v. Trustees of Purdue University*,] 658 F.Supp. 184 (N.D.Ind. 1987). The complaint alleged that plaintiffs were participants in the Teachers Insurance and Annuity Association Retirement System of Purdue University (TIAA–CREF). Upon a participant's "normal retirement age"—age 65 for those who were appointed on or after July 1, 1948 and age 66 for those appointed before that date—Purdue contributes to TIAA–CREF an amount equal to a salary percentage and discontinues contributions thereafter. Plaintiffs here alleged that Purdue's discontinuance of TIAA–CREF contributions on their behalf because of age violated ADEA sections 4(a)(1) and 4(a)(2), 29 U.S.C. § 623(a)(1), (a)(2).

In light of our recent decision in *Karlen*, it appears that the plaintiffs may prove sufficient facts in support of their claim which would entitle them to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46 [78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)]; *Meriwether v. Faulkner*, 821 F.2d 408 (7th Cir.1987). Therefore, the judgment of dismissal is reversed and the case is remanded for trial, with plaintiffs permitted full discovery beforehand.