A. Earl BELL, John E. Christian, and Ben Z. Klatch, et al., Plaintiffs–Appellants,

v.

Trustees of PURDUE UNIVERSITY and Purdue University, Defendants– Appellees.

No. 91–3095.

United States Court of Appeals, Seventh Circuit.

Argued May 27, 1992.

Decided Sept. 21, 1992.

Rehearing Denied Oct. 26, 1992.

Raymond C. Fay (argued), Thomas R. Gibbon, Hillary L. Pettegrew, Bell, Boyd & Lloyd, Washington, D.C., Alan M. Serwer, Bell, Boyd & Lloyd, Chicago, Ill., Loretta H. Rush, Reiling, Teder & Withered, Lafayette, Ind., for plaintiffs-appellants.

John C. Duffey (argued), John F. Bodle, Kevin D. Nicoson, Stuart & Branigin, Lafayette, Ind., for defendants-appellees.

Before EASTERBROOK, MANION and KANNE, Circuit Judges.

MANION, Circuit Judge.

In 1986, the plaintiff employees brought an age discrimination action against the Trustees of Purdue University and the University itself. The district court granted a motion to dismiss, and the plaintiffs appealed. This court remanded the case to the district court. Although the district court granted partial summary judgment for the defendants, the case proceeded to trial. The jury returned a verdict for the defendants on June 14, 1991. After the district court denied their post-judgment motions, the plaintiffs appealed. We affirm because we conclude that the district court should have granted summary judgment to the defendants.

## I.

### A. Facts

This case comes before this court for a second time. The plaintiffs are (or were, at the relevant times) employed by Purdue University and participate (or did participate) in Purdue's Teachers Insurance and Annuity Association Retirement System ("TIAA–CREF Plan" or "Plan"), a defined-contribution pension plan for the benefit of Purdue employees. Since 1937, Purdue has made pension contributions to the TIAA–CREF Plan on behalf of employees. Under the Plan, Purdue contributes "11% of basic budgeted annual salary up to $9,000 and 15% of basic budgeted annual salary in excess of $9,000" for participants who are covered by Social Security and "15% of basic budgeted annual salary" for participants who are covered by Civil Service. (Joint App. II at 92.)

In 1978, amendments to the Age Discrimination in Employment Act (ADEA) (Pub.L. No. 95–256, § 3(a), 3(b)(3), 92 Stat. 189, 190 (1978)), required Purdue to raise the mandatory retirement age for professors to age 70. Purdue amended the Plan, and, pursuant to those amendments, from July 1, 1982 to January 1, 1988, Purdue stopped making contributions at the end of the fiscal or academic year in which the plan participant reached age 65—the "normal retirement age."

In 1986, Congress again amended the ADEA to provide that an employer could not discontinue pension contributions until the participant actually retired. The modification became effective on January 1, 1988. Purdue modified the TIAA–CREF Plan to comply with these ADEA revisions and began making contributions for Plan participants even after they reached age 65. This dispute is confined to those participants who did not receive pension contributions between 1982 and 1988, even though they continued working at Purdue after reaching age 65.

### B. Procedural History

The plaintiffs filed this ADEA case in May of 1986, charging that Purdue's practice of discontinuing pension benefit payments for employees who had reached "normal retirement age" amounted to a violation of sections 4(a)(1) and 4(a)(2) of the ADEA, 29 U.S.C. §§ 623(a)(1), (a)(2),[1]

---

1. 29 U.S.C. §§ 623(a)(1) and (a)(2) read as follows:

    It shall be unlawful for an employer—
      (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;
      (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment

by discriminating against employees on the basis of age. The case has since had an extensive history, including one previous trip to this court, impacted by the evolution of ADEA law.

In 1987, the district court granted the defendants' Rule 12(b)(6) motion to dismiss. *Bell v. Trustees of Purdue University*, 658 F.Supp. 184 (N.D.Ind.1987). The court relied on section 4(f)(2) of the ADEA, 29 U.S.C.A. 623(f)(2) (1985), which stated that it was not unlawful for an employer "to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension or insurance plan, which is not a subterfuge to evade the purposes" of the ADEA. Although the court determined that the language was ambiguous, the court found a colloquy during the 1978 amendment debates during which Representative Hawkins specifically stated that section 4(f)(2) permitted employers to discontinue payments to pension plans after an employee reached normal retirement age. *Bell*, 658 F.Supp. at 188.

On appeal, however, this court remanded the case for further proceedings in light of *Karlen v. City Colleges of Chicago*, 837 F.2d 314 (7th Cir.1988), *cert. denied sub nom. Cook County College Teachers Union Local 1600 v. City Colleges of Chicago*, 486 U.S. 1044, 108 S.Ct. 2038, 100 L.Ed.2d 622 (1988), which had been issued during the pendency of the plaintiffs' appeal. *Bell v. Trustees of Purdue University*, 845 F.2d 1023 (7th Cir.1988). In *Karlen*, this court had held that to negate a subterfuge allegation and insulate itself under section 4(f)(2), an employer had to establish age-based cost justifications for variations in retirement benefits. *Id.* at 319.

Subsequently, the Supreme Court decided *Public Employees Retirement System of Ohio v. Betts*, 492 U.S. 158, 109 S.Ct. 2854, 106 L.Ed.2d 134 (1989). *Betts* rejected the view that a charge of subterfuge could be negated only by age-based cost justifications. *Id.* at 175, 109 S.Ct. at 2865. *Betts* also stated that section 4(f)(2) was not a defense to what was otherwise a violation of the ADEA but rather an element of the plaintiff's prima facie case. *Id.* at 180, 109 S.Ct. at 2868. Although Congress subsequently reversed *Betts* by the Older Workers Benefit Protection Act, Pub.L. No. 101–433, 104 Stat. 978 (Oct. 16, 1990) (OWBPA), OWBPA's provisions operate prospectively only.[2]

The defendants moved for summary judgment under *Betts*. The plaintiffs contended that *Betts* should not apply retroactively to cases that were pending at the time of the decision, but the district court, applying the factors set out in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), disagreed. *Bell v. Trustees of Purdue Univ.*, 761 F.Supp. 1360, 1365 (N.D.Ind.1991). Nevertheless, the court denied the defendants' motion for summary judgment because it could not conclude as a matter of law that a reasonable jury could not infer from the amendment of the Plan and its timing that the defendants had not " 'utiliz[ed] its pension plan as a subterfuge for age-based discrimination in wages.' " *Id.* at 1366 (quoting *Betts*, 492 U.S. at 180, 109 S.Ct. at 2868). Subsequently, the court granted the defendants' motion for partial summary judgment holding that Purdue's TIAA–CREF Plan qualified as a bona fide employee benefit plan under section 4(f)(2) and that "Purdue's contributions amounted to 'fringe benefits' and not basic compensation." Mem. Order June 7, 1991. The case proceeded to trial and the defendants presented two defenses. First, they argued that the contribution cutoff was not a sub-

---

opportunities or otherwise adversely affect his status as an employee, because of such individual's age. . . .

**2.** A year after *Betts*, Congress enacted OWBPA, Pub.L. No. 101–433, 104 Stat. 978 (Oct. 16, 1990), in which it specifically stated that it sought to "restore the original congressional intent in passing and amending the [ADEA],

which was to prohibit discrimination against older workers in all employee benefits except when age-based reductions in employee benefit plans are justified by significant cost considerations." *Id.* at § 101. Congress made the provisions of the OWBPA operate prospectively only. *Id.* at § 105.

terfuge for discrimination. Second, they argued that the "good faith defense," 29 U.S.C. § 259, shielded them because they had amended the Plan in reliance on a provisional Department of Labor Interpretive Bulletin which interpreted section 4(f)(2) of the ADEA to allow contributions to be cut at a normal retirement age.[3] The jury returned a general verdict for the defendants. The plaintiffs moved for a jnov or alternatively a new trial. The district court denied the motions, and the plaintiffs appeal.

The plaintiffs raise several issues. They contend that the good faith defense was not available because the Department of Labor Interpretive Bulletin was not in effect at the time that the defendants amended the Plan. If the defense was available, they contend that the evidentiary rulings, the district court's jury instructions or the insufficiency of the evidence on the good faith defense justify a new trial. In addition, the plaintiffs argue that *Betts* was improperly applied in this case. Alternatively, the plaintiffs argue that if *Betts* was the governing law in this case, a new trial should be ordered based on the weight of the evidence. Finally, the plaintiffs contend that erroneous evidentiary rulings and jury instructions on the age discrimination issue deprived them of a fair trial.

█ Because we conclude that the district court could have granted summary judgment for the defendants, we affirm.[4]

## II.  Analysis

█ We will turn our attention immediately to the question of the retroactivity of *Betts* and its application in this case.[5] Because we conclude *Betts* controls this case and the district court should have granted the defendants summary judgment, we

---

**3.** 29 U.S.C. § 259 provides as follows:

(a) In any action or proceeding based on any act or omission on or after May 14, 1947, *no employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay minimum wages or overtime compensation under the Fair Labor Standards Act of 1938, as amended* [29 U.S.C.A. § 201 et seq.], the Walsh–Healey Act [41 U.S.C.A. § 35 et seq.], or the Bacon–David Act [40 U.S.C.A. § 276a et seq.], if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of the agency of the United States specified in subsection (b) of this section, or any administrative practice of enforcement policy of such agency with respect to the class of employers to which he belonged. Such a defense, if established, shall be a bar to the action or proceeding, notwithstanding that after such act or omission, such administrative regulation, order, ruling, approval, interpretation, practice, or enforcement policy is modified or rescinded or is determined by judicial authority *to be invalid* or of no legal effect.

The Department of Labor regulation on which Purdue relied was provisional at the time of the November 1978 decision to stop TIAA–CREF Plan contributions, but that regulation reads as follows:

(A) A defined contribution plan may provide for the cessation of employer contributions after the normal retirement age of any participant in the plan. . . .

29 C.F.R. § 860.120(f)(4)(ii).

**4.** In addition to arguing that the district court properly applied the law at trial, the defendants also argue, on the basis of *EEOC v. City Colleges of Chicago*, 944 F.2d 339 (7th Cir.1991), that the plaintiffs' claims are barred by the statute of limitations. In *City Colleges*, this court held that the statute of limitations for a suit challenging a retirement plan discriminating on the basis of age began to run at the time that the plan was adopted. *Id.* at 343. We conclude that the defendants waived their statute of limitations argument by not raising it prior to appeal. *Reynolds v. Bowen*, 844 F.2d 451, 453 (7th Cir. 1988). Although not decided until this appeal was pending, the holding in *City Colleges* stemmed directly from *Betts* and *Lorance v. AT & T Technologies, Inc.*, 490 U.S. 900, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989). Therefore, the defendants could have readily constructed their present statute of limitations argument while this case was before the district court. We therefore reject their belated attempt to forge the argument now.

**5.** We note that we have held that Purdue University is an instrumentality of the state entitled to Eleventh Amendment immunity, *Kashani v. Purdue University*, 813 F.2d 843 (7th Cir.1987), cert. denied, 484 U.S. 846, 108 S.Ct. 141, 98 L.Ed.2d 97. However, the Eleventh Amendment does not prevent our exercise of jurisdiction in this case since it does not apply to cases under the ADEA. *Heiar v. Crawford County, Wisconsin*, 746 F.2d 1190, 1194 (7th Cir.1984), cert. denied, 472 U.S. 1027, 105 S.Ct. 3500, 87 L.Ed.2d 631 (1985).

need not delve into the plaintiffs' argument on the good faith defense.

### A. Retroactivity of *Public Employees Retirement System v. Betts*

■ On April 2, 1991, the district court issued its order granting partial summary judgment to the defendants and further stating: "Given that OWBPA by its terms does not apply to pre-enactment events, it cannot be disputed under these facts that *Betts* is the applicable 'law existing at the time of [this] decision.'" *Bell*, 761 F.Supp. at 1363. To reach that conclusion, the district court applied the three factors outlined in *Chevron*. Subsequent to the district court's order, however, the Supreme Court decided *James B. Beam Distilling Co. v. Georgia*, —— U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991), which concluded that "when the Court has applied a rule of law to the litigants in one case it must do so with respect to all others not barred by procedural requirements or res judicata." *Id.* at ——, 111 S.Ct. at 2448. The plaintiffs maintain that *Chevron* still guides the retroactivity analysis in this case and that under *Chevron*, *Betts* should not apply retroactively.

Recently, however, this court has unequivocally stated that "it is error to apply the *Chevron* analysis to decide that a new rule should be applied prospectively if the rule was retroactively applied to the parties in the case in which it was originally announced." *Luckett v. Jett*, 966 F.2d 209, 213 n. 4 (1992) (superseding 955 F.2d 1152 (1992)).[6] In another recent opinion, this court noted that "[a]lthough *Beam* is a fragmented opinion without a majority, six justices apparently disapproved of the sort of 'selective prospectivity' engaged in by the district court." *Bennett v. Jett*, 966 F.2d 207, 208 (7th Cir.1992) (vacating and superseding 956 F.2d 138 (1992) on petition for rehearing). This understanding of *Beam* comports with decisions from the Fifth, Eighth and Eleventh Circuits. *See, e.g., Lufkin v. McCallum*, 956 F.2d 1104,

1107 (11th Cir.1992) (applying *Beam* rather than *Chevron* analysis); *Bottineau Farmers Elevator v. Woodward–Clyde Consultants*, 963 F.2d 1064, 1075 (8th Cir.1992) (*Beam* limited the applicability of *Chevron*); *Sterling v. Block*, 953 F.2d 198, 200 (5th Cir.1992) ("It is error ... to apply the *Chevron Oil* analysis to decide that a new rule should be applied prospectively if the rule was retroactively applied to the parties in the case in which it was originally announced.").

Under *Beam*, the dispositive question is whether the *Betts* Court applied its new rule to the parties in *Betts*. The Court unquestionably did so. Accordingly, without considering whether the district court properly applied the *Chevron* factors, we reach the same conclusion as the district court. *Betts* is the operative law in this case.

### B. Application of Betts

■ *Betts* broadened the scope of section 4(f)(2). The plan at issue in *Betts* made disability retirement benefits available only to employees who retired under the age of 60. The plan was discriminatory on its face under the ADEA, but the employer invoked the section 4(f)(2) exemption which provided that it was not unlawful for an employer to "observe the terms of ... any *bona fide employee benefit plan* such as a retirement, pension, or insurance plan, which is *not a subterfuge* to evade the purposes of this chapter...." 29 U.S.C. § 623(f)(2) (1989) (emphasis added). The parties conceded that the retirement benefits plan at issue was "bona fide" in that it "existed and paid out benefits." *Betts*, 492 U.S. at 166, 109 S.Ct. at 2860. Furthermore, without delimiting the meaning of the phrase "any ... employee benefit plan such as a retirement, pension, or insurance plan," the Court concluded that the plan at issue in *Betts* fell squarely into the category. Therefore, the Court concluded, the defendant was "entitled to the protection of the § 4(f)(2) exemption unless its plan is

---

**6.** The court noted, however, that *Chevron* remains the appropriate analysis in making the initial determination of whether a decision should be applied prospectively. *Luckett*, 966 F.2d at 213.

'a subterfuge to evade the purposes of' the [ADEA]." *Id.* (quoting 29 U.S.C. § 623(f)(2) (1989)). Furthermore, whereas lower courts had placed the burden of proving subterfuge on the employer, the Court placed the burden on the employee challenging the benefits program. *Id.* at 180, 109 S.Ct. at 2868.

The Court implicitly recognized, then, that section 4(f)(2) contemplates a two-step analysis. First, is the alleged discriminatory act taken pursuant to a bona fide employee benefit plan? Second, if so, is that plan a subterfuge to evade the purposes of the ADEA?

In this case, the district court decided the first step of the analysis on summary judgment for the defendants. The plaintiffs maintain on appeal that the district court erred. But reviewing the district court's grant of summary judgment *de novo*, as we must, *McMillian v. Svetanoff*, 878 F.2d 186, 188 (7th Cir.1989), we agree with the district court.

The district court's determination comports with the relevant regulations and case law addressing the meaning of "bona fide" and "employee benefit plan." The regulations pertaining to section 4(f)(2) state that a plan is "bona fide" if its terms have been "accurately described in writing to all employees and if it actually provides the benefits in accordance with the terms of the plan." 29 C.F.R. § 1625.10(b) (1989). This definition is consistent with the cases stating that a "bona fide" employee benefit plan is one that exists and pays substantial benefits. *See United Airlines, Inc. v. McMann*, 434 U.S. 192, 194–95, 98 S.Ct. 444, 446, 54 L.Ed.2d 402 (1977); *Carpenter v. Continental Trailways*, 635 F.2d 578, 580 (6th Cir.1980), *cert. denied*, 451 U.S. 986, 101 S.Ct. 2320, 68 L.Ed.2d 844 (1981); *Jensen v. Gulf Oil Refining & Marketing Co.*, 623 F.2d 406, 413 (5th Cir.1980). The plaintiffs do not contest the fact that Purdue provided to employees a document that set out the requirements, conditions and benefit options of the TIAA–CREF Plan. Nor do plaintiffs contest that Purdue had been paying into the TIAA–CREF Plan since 1937 and that employees have re-

ceived substantial benefits from the TIAA–CREF Plan. Accordingly, we conclude, like the district court, that the TIAA–CREF Plan was "bona fide" as a matter of law.

Being a "bona fide" plan, however, is only half of the threshold requirement under section 4(f)(2) because the plan must also be an "employee benefit plan such as a retirement, pension, or insurance plan." The regulations state that an " 'employee benefit plan' is a plan, such as a retirement, pension or insurance plan, which provides employees with what are frequently referred to as 'fringe benefits.' " 29 C.F.R. § 1625.10(b) (1989). "A nonfringe benefit immediately compensates an employee for current services—job performance—while a fringe benefit ordinarily rewards the employee for longevity." *EEOC v. Boeing Services International*, 968 F.2d 549, 556 (5th Cir.1992).

Plaintiffs argue that the nature of the TIAA–CREF Plan contributions was in dispute and therefore the district court incorrectly concluded on summary judgment that "Purdue's contributions to the TIAA–CREF Plan on behalf of its employees amounted to 'fringe benefits' and not basic compensation." Order, Jun. 7, 1991. The record, taken as a whole, however, could not have led a rational trier of fact to conclude that the TIAA–CREF Plan contributions were anything other than fringe benefits. *See Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' "). The documents and the depositions in the record do not support the plaintiffs' contention that the contributions to the TIAA–CREF were a wage substitute. The plaintiffs point to the Purdue benefits statement which includes the TIAA–CREF contributions in the list of benefits that are described as "value added to your income." It is absurd to suggest, however, that only wages can add value to income. Furthermore, along with the TIAA–CREF contributions, other benefits that the statement lists as "value added to your income" include medical security

leave, term life insurance, accidental death and dismemberment insurance and social security. Under the plaintiffs' argument, all of these benefits would be "wages." The plaintiffs also rely on excerpts from the depositions and letters from disgruntled employees to bolster their contention that the TIAA–CREF Plan contributions constituted wages. The perception of employees, however, is not enough to recast fringe benefits as wages.

The plaintiffs' reliance on *American Ass'n of Retired Persons v. Farmers Group*, 943 F.2d 996, 1003 (9th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 937, 117 L.Ed.2d 108 (1992), to argue that a "hybrid" plan can violate the ADEA is unavailing. In *Farmers Group*, the profit-sharing plan that was found to be a "hybrid" plan had aspects of both a retirement plan and wages because it provided immediate compensation once an employee had been with the company for five years. It was designed at least in part to "compensate for work actually performed by an employee rather than as a reward for longevity." *Id.* at 1003. The TIAA–CREF Plan provides no similar access to immediate compensation, and the plaintiffs' attempt to analogize the profit-sharing plan in *Farmers' Group* to the TIAA–CREF Plan in this case fails.

Since the TIAA–CREF Plan constitutes a "bona fide employee benefit plan," section 4(f)(2) condones age differentiation pursuant to the TIAA–CREF Plan's terms unless the Plan is a "subterfuge to evade the purposes of [the ADEA]." The precise meaning of this phrase in section 4(f)(2) lay at the center of *Betts*. Harking back to its decision in *McMann*, the Court reiterated that " 'subterfuge' must be given its ordinary meaning as 'scheme, plan, stratagem, or artifice of evasion.' " *Betts*, 492 U.S. at 167, 109 S.Ct. at 2861. In *McMann*, the Court concluded that a pre-ADEA plan could not be a subterfuge, but in *Betts*, the Court had to inquire into the precise meaning of the section 4(f)(2) exemption in the context of a post-ADEA plan. *Id.* at 168–69, 109 S.Ct. at 2861–62. The Court unequivocally rejected the regulations and court opinions that labeled any age-based

distinction in a fringe benefit plan as a "subterfuge" unless the employer provided a cost-justification for the distinction. *Id.* at 169–75, 109 S.Ct. at 2862–65. It then turned to molding its own definition.

Since section 4(f)(2) excluded only age differentiation used as a subterfuge to "evade the *purposes* of" the ADEA, the Court began by examining the three purposes of the ADEA set out in section 2(b): (1) to promote employment of older persons based on their ability rather than age; (2) to prohibit arbitrary age discrimination in employment; (3) to help employers and workers find ways of meeting problems arising from the impact of age on employment. 29 U.S.C. § 621(b). In *Betts*, the plan could have been a "subterfuge to evade" only the second purpose because the benefits pertained to post-retirement benefits. In this case, by contrast, the plaintiffs maintained that TIAA–CREF could be a subterfuge to evade either the second or the first purpose of the ADEA. Nevertheless, as the Court stated in *McMann*—and reiterated in *Betts*—the purposes of the ADEA cannot readily be distinguished from its provisions because the provisions are the vehicle by which the purposes are carried out. *Betts*, 492 U.S. at 175, 109 S.Ct. at 2865 (citing *McMann*, 434 U.S. at 198, 98 S.Ct. at 448). Therefore, our inquiry—like the inquiry in *Betts*—must focus on whether the TIAA–CREF Plan is a subterfuge to evade one of the substantive provisions of the ADEA. The applicable provisions include the ADEA's ban on age-based discrimination with respect to "compensation, terms, conditions, or privileges of employment" and age-based discrimination that "would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee." 29 U.S.C. § 623(a)(1) and (2).

As *Betts* recognized, any employee benefit plan expressly mandating disparate treatment of older workers could be said to be a "subterfuge" to evade the purposes of section 4(a)(1) and (2). *Betts*, 492 U.S. at 177, 109 S.Ct. at 2866. However, "Congress left the employee benefit battle for

another day, and legislated only as to hiring and firing, wages and salaries, and other nonfringe-benefit terms and conditions of employment." *Betts*, 492 U.S. at 177, 109 S.Ct. at 2866. *Betts* went on to quote statements from the Congressional Record suggesting the breadth of the section 4(f)(2) exemption:

Senator Yarborough, the principal sponsor and floor manager of the Administration bill, observed that § 4(f)(2), "when it refers to retirement, pension, or insurance plan, it means that a man who would not have been employed except for this law does not have to receive the benefits of the plan" 113 Cong.Rec. 31255 (1967). Indeed at least one Congressman opposed the ADEA precisely because it permitted employers to exclude older employees from participation in benefit plans altogether.... 113 Cong.Rec. 34745 (1967) (remarks of Rep. Smith).

While the Committee Reports on the ADEA do not address the matter in any detail, they do state that § 4(f)(2) "serves to emphasize the primary purpose of the bill—hiring of older workers—by permitting employment without necessarily including such workers in employee benefit plans." S.Rep. No. 723, [90th Cong., 1st Sess.] at 4; H.R.Rep. No. 805, 90th Cong., 1st Sess., 4 (1967).

*Betts*, 492 U.S. at 178, 109 S.Ct. at 2867. The Court then concluded that age-based differentials in benefits plans will fall outside the section 4(f)(2) exemption only when the differentials "cloak[ ] forbidden discrimination." *Betts*, 492 U.S. at 180, 109 S.Ct. at 2867. As examples, the Court suggested that formulating a plan provision to retaliate against an employee who files an ADEA suit would constitute using the plan as a subterfuge to evade section 4(d) of the ADEA. Similarly, reducing salaries for all employees while substantially increasing benefits for younger workers might give rise to an inference that the employer was in fact utilizing the plan to cloak age-based discrimination in wages. *Id.* at 180, 109 S.Ct. at 2868.

The plaintiffs proffered no such evidence in opposition to summary judgment in this case. The plaintiffs pointed to statements and anecdotal evidence that some officials at Purdue preferred younger faculty. From this evidence the plaintiffs insisted that a fact finder could draw the inference that the cut in contributions to the TIAA–CREF Plan was intended to weed out faculty members over 65. However, the defendants cannot be liable for their motives if their conduct has not evaded the ADEA's prohibitions.

The plaintiffs maintain that ceasing contributions evaded either the prohibition against wage cuts or forced retirement based on age. The plaintiffs, however, misunderstand the nature of evasion. In the wage cut example offered by the *Betts* Court, the hike in fringe benefits provided to younger employees in and of itself did not violate the ADEA—the wage cut it camouflaged did. The hypothetical employer was not simply establishing an age differential in fringe benefits, but hiding discrimination prohibited by the ADEA by manipulating fringe benefits. The plaintiffs in this case have offered no evidence that the fringe benefit cut in this case is anything more than meets the eye—an age differential in fringe benefits which is permitted under the ADEA. As discussed above, the TIAA–CREF Plan contributions were purely a fringe benefit, not wages, and there is no indication that Purdue altered the wages of employees over 65 in any way. Consequently, Purdue has not evaded the ADEA's wage discrimination prohibition.

Similarly, Purdue has not evaded the prohibition against firing, refusing to hire or forcing retirement of employees before age 70. The defendants have not given the plaintiffs a Hobson's choice such as giving them an option of retiring at 65 or losing their pension. Granted, Purdue's decision to cease contributions at age 65 gives employees less incentive to continue working past age 65 than they would have if Purdue continued making contributions. But taking away an incentive in the form of a fringe benefit is not the kind of evasion prohibited by *Betts*'s interpretation of the ADEA. By quoting the Congressional

statements set out above, *Betts* recognized that an employer could exclude older employees from benefits altogether based purely on their age even if the employer provided no cost justification for the exclusion. If taking away an incentive to work by excluding employees from benefits altogether does not violate the ADEA, then neither does ceasing contributions to one pension plan.

Summary judgment is properly granted when a non-movant fails to produce any proof to establish an element essential to the party's case and upon which the party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Under *Betts,* an employee who seeks to challenge a benefit plan provision as a subterfuge to evade the purposes of the ADEA bears the burden of proving that the discriminatory plan provision actually was intended to discriminate in a non-fringe-benefit aspect of the employment relation. *Betts,* 492 U.S. at 180, 109 S.Ct. at 2868. Since we have determined that the plaintiffs failed to produce any proof tending to establish a "subterfuge to evade the purposes" of the ADEA in this case, we conclude that the district court should have granted summary judgment to the defendants. On this alternative ground we affirm the district court's judgment in the defendants' favor. *Cf. Schachar v. American Academy of Ophthalmology, Inc.,* 870 F.2d 397, 399 (7th Cir.1989) (affirming judgment entered after trial after determining that the district court should have granted summary judgment).[7]

### III. Conclusion

For the reasons stated above, the district court judgment is

AFFIRMED.

---

7. The result in this case is derived from our interpretation of *Betts* and is not applicable in cases affected by the OWBPA enacted in 1990 (*cf.* pp. 424–425 *supra*).