2025 IL App (3d) 240248

Opinion filed June 26, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| KENNETH TEPPEL, | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| Plaintiff-Appellee, | ) | Will County, Illinois, |
| | ) | |
| v. | ) | |
| | ) | |
| THE BOARD OF TRUSTEES OF THE | ) | |
| BOLINGBROOK POLICE PENSION FUND | ) | Appeal No. 3-24-0248 |
| and JOSEPH BRANKIN, | ) | Circuit No. 23-MR-73 |
| | ) | |
| Defendants | ) | |
| | ) | |
| (The Board of Trustees of the Bolingbrook | ) | |
| Police Pension Fund, | ) | Honorable |
| | ) | John C. Anderson, |
| Defendant-Appellant). | ) | Judge, Presiding. |

_____

JUSTICE HETTEL delivered the judgment of the court, with opinion.
Presiding Justice Brennan and Justice Peterson concurred in the judgment and opinion.

_____

**OPINION**

¶ 1     Retired police chief, Kenneth Teppel, sought administrative review of the decision of the

Board of Trustees of the Bolingbrook Police Pension Fund (Board), which held that compensation

for his police pension and retiree insurance contributions did not constitute pensionable benefits

under the Illinois Pension Code (40 ILCS 5/1-101 *et seq.* (West 2022)). The circuit court reversed

the Board's decision, and the Board appeals. For the following reasons, we affirm the judgment of the circuit court.

¶ 2                                    I. BACKGROUND

¶ 3        The Village of Bolingbrook (Village) hired Teppel as a police officer in 1990 and promoted him to public safety director (also referred to as police chief) in 2017. As a Village police officer, Teppel received various employee benefits. In addition, he was required to contribute 9.91% of his salary to the police pension fund and pay a specified amount into the retiree insurance fund.

¶ 4        The Village personnel manual explains the benefits and contribution requirements for all municipal employees. Chapter 7, titled "Fringe Benefits", provides benefits for department directors, including "pick-up" payments for police pension fund and retiree insurance fund contributions. At the time Teppel was promoted to police chief, chapter 7 provided for director benefits as follows:

> "In addition to those benefits provided for full-time employees, Department Directors will receive the following benefits:
>
>> Pension Pick-up
>>
>> Each Department Director will receive as wages an amount equal to his or her employee contribution into the appropriate pension fund.
>>
>> Retiree Insurance Pick-up
>>
>> Each Department Director will receive as wages an amount equal to his or her employee contribution into the Retiree Insurance Fund."

Other employee benefits described in chapter 7 included car allowances, waiver of insurance premiums, dental benefits, vision benefits, and prescription benefits.

¶ 5        Teppel received pension pick-up and retiree insurance pick-up payments every other week in his paycheck after his promotion to police chief. Teppel's direct deposit slips for July 10 and July 24, 2020, reported biweekly earnings as follows: (1) $5,933.17 designated as salary, (2) $75 designated as a cell phone allowance, (3) $230.77 designated as a car allowance, (4) $659.79 designated as pension pick-up payments, and (5) $66.58 designated as retiree insurance pick-up payments. His deposit slips also reported deductions, including pension contributions in the amount of $659.96 and retiree insurance contributions in the amount of $66.60. Teppel's reported earnings and deductions were the same for every paycheck issued in 2020.

¶ 6        Teppel retired from the police department on July 31, 2020. Prior to his retirement, he submitted an application for retirement pension benefits to the Board. The application claimed a total pensionable salary of $173,148.12, which was calculated on the form as base salary ($154,262.50), plus pension pick-up payments ($17,154.54), plus retiree insurance pick-up payments ($1,731.08).

¶ 7        The Board initially approved Teppel's application, setting his pensionable salary at $173,148.12. However, after another retired police officer intervened, alleging that Teppel was double-dipping,[1] the Board rescinded its decision and scheduled hearings on the matter.

¶ 8        During the hearings, the following relevant facts were revealed. At the time of his retirement, Teppel held the position of public safety director, a position equivalent to police chief. His base annual salary as chief was $154,262.50. Teppel's 9.91% pension contribution was calculated using the combined total of his base salary, his pension pick-up compensation, and his retiree insurance pick-up compensation. Teppel testified that whatever he contributed to the

_____

[1]The Board ultimately concluded that the intervenor's claim lacked merit. His double-dipping allegations are unrelated to the issues raised in this appeal.

pension fund and the retiree insurance fund, the Village was paying him back in pick-up payments. The parties agreed that Teppel's cell phone and car allowances were not pensionable salary.

¶ 9     Village finance director Rosa Cojulun testified that she considered pension and retiree insurance pick-up payments as wages. She explained that:

"[Pension pick-ups] are based on your base pay. And also the way I have to work it out is we have the base pay. We know what the percentage of the contribution for both the pension and the retiree, what the percentages are. ***. So then we plug that into the formula. So then we just have to match them up at the end of the bottom line. They have to match. So it's added on to the base pay."

She confirmed that 9.91% is withheld on the combined total of the base salary, the pension pick-up, and the retiree pick-up and remitted to the pension fund. Cojulun testified that the pension pick-up and retiree insurance pick-up payments have always been included in the total fixed wages for purposes of calculating the pension contribution and that the pick-up payments have never been calculated as reimbursements. In response to questions by Teppel's counsel, Cojulun agreed that she calculates an "even amount" and then applies the same amount every pay period as "wages."

¶ 10    Pursuant to subpoena, the Village produced numerous documents during the administrative proceedings, which Teppel submitted as exhibits. Those documents included (1) the budget detail report for fiscal year 2020-21, setting the police chief's total compensation at $183,005, and (2) the ordinance adopting the annual budget for the 2020-21 fiscal year (Village of Bolingbrook Ordinance No. 20-020 (approved April 28, 2020)), setting the combined administration salaries for the police chief and the deputy police chief at $338,123.

¶ 11    Cojulun testified regarding both the budget detail report and the annual budget ordinance, stating that she is responsible for drafting the annual budget for Village approval. Cojulun

explained that she uses a worksheet to create a budget detail report for the upcoming fiscal year, which she then presents to the Village board for approval. Cojulun identified the budget detail report for fiscal year 2020-21 and noted that it contained a breakdown of approved salaries for police chief and deputy police chief. The report listed the deputy's salary as $155,118 and Teppel's salary as $183,005. Cojulun agreed that the police chief's salary was higher in the detail budget report than the salary listed on Teppel's pension application. She explained that the pensionable salary listed on Teppel's application was lower because it did not include his $6,000 car allowance, which was not pensionable, or the 2.5% salary increase projected for the 2020-21 fiscal year.

¶ 12        Mark Thielen, the assistant general counsel for the Illinois Department of Insurance (IDOI), Public Pension Division, testified that IDOI provides advisory services to municipal pension fund administrators as directed in the Pension Code. He then identified an e-mail he wrote in September 2021 in response to an inquiry made by intervenor Joseph Brankin, asking "whether an additional 'fringe benefit' provided to a *** 'Chief of Police' should be included as 'pensionable salary' under the Illinois Pension Code." Brankin's inquiry stated that Teppel was receiving "reimbursements" for his pension and retiree insurance contributions under the personnel policy manual as "fringe benefits" and claimed that Teppel's salary was not a line-item in the Village budget but did not include attachments. In his response, Thielen referenced provisions in the Pension Code (40 ILCS 5/3-125.1, 4-118.1 (West 2020)) and the rules promulgated by IDOI (50 Ill. Adm. Code 4402.30 (1996)) and stated that, under the definition of "salary" in those regulatory provisions, the reimbursement of employee pension contributions and retiree insurance contributions were not pensionable salary.

¶ 13        The Board issued a written decision concluding that the pick-up payments constituted fringe benefits in the form of reimbursements that are not included as "salary" under section 3-

125.1 of the Pension Code. As such, the Board determined that Teppel's salary attached to rank for the purpose of calculating pension was his base salary of $154,262.50.

¶ 14    Teppel filed a complaint for administrative review in the circuit court, claiming the Board's decision to reduce his pensionable salary was "incorrect as a matter of law and/or clearly erroneous." After hearing arguments, the circuit court reversed the Board's decision and set Teppel's pensionable salary at $173,148.12, the amount originally approved. The Board appeals.

¶ 15                                II. ANALYSIS

¶ 16                             A. Standard of Review

¶ 17    At the outset, the Board argues that the circuit court applied the wrong standard in considering Teppel's administrative complaint and reversing the Board's decision by invoking the *de novo* standard of review rather than the clearly erroneous standard.

¶ 18    In cases involving administrative review, we review the decision of the administrative agency, not the determination of the circuit court. *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 531 (2006). The applicable standard of review in considering the decision of the Board turns on whether the question presented is one of fact, one of law, or a mixed question of fact and law. *Roselle Police Pension Board v. Village of Roselle*, 232 Ill. 2d 546, 552 (2009). If the administrative decision involves questions of fact, the manifest-weight-of-the-evidence standard applies; questions of law are subject to *de novo* review, and mixed questions of fact and law are reviewed under the "clearly erroneous" standard. *Marconi*, 225 Ill. 2d at 532. Regardless of which standard of review applies, the plaintiff in an administrative proceeding bears the burden of proof. *Id.* at 532-33.

¶ 19    In this case, the Board asserts that the issue before us presents a mixed question of fact and law and, therefore, the appropriate standard of review is the clearly erroneous standard, urging us

6

to apply discretion and deference to its decision. See *Elementary School District 159 v. Schiller*, 221 Ill. 2d 130, 142-43 (2006). Teppel, on the other hand, argues that there are no disputed questions of fact and that the question before us is purely a question of statutory interpretation. Thus, he asserts that the appropriate standard of review is *de novo*. See *Ryan v. Board of Trustees of the General Assembly Retirement System*, 236 Ill. 2d 315, 319 (2010).

¶ 20    As asserted by both parties, the issue on appeal is whether the amounts paid to the police chief as pension pick-up and retiree pick-up payments are part of Teppel's pensionable salary as defined in the Pension Code. While we recognize that the case law discussing the appropriate standard to apply on administrative review is not entirely consistent, we agree with Teppel that the issue before us is purely one of statutory interpretation. We are asked to determine a question of law, and the facts are not in dispute. Therefore, the appropriate standard of review in this case is *de novo*. See *id.*

¶ 21                    B. Police Chief Pick-Up Payments and Pensionable Salary

¶ 22    As previously mentioned, the sole issue presented on appeal is whether the pension and retiree insurance pick-up payments issued by the Village should be included in Teppel's pensionable salary under section 3-125.1 of the Pension Code.[2] Police pensions for municipalities with a population of 500,000 and under are governed by article 3 of the Pension Code. See 40 ILCS 5/art. 3 (West 2022). Section 3-111 of the Pension Code provides that a police officer's pension is based on "the salary attached to the rank held on the last day of service or for one year prior to the last day, whichever is greater." *Id.* § 3-111. Section 3-125.1 defines "salary" as:

---

[2]We recognize that section 3-125.2 of the Pension Code (40 ILCS 5/3-125.2 (West 2022)) provides that a municipality may "pick up" a police officer's pension contribution by reducing an officer's cash salary or offsetting the contribution against a future salary increase. In this case, however, the parties maintain that the Village's treatment of Teppel's pension contribution does not fall under the umbrella of contributions described in section 3-125.2 and that section 3-125.1 is the only applicable provision. We agree and therefore limit our review to section 3-125.1 of the Pension Code.

"the annual salary, including longevity, attached to the police officer's rank, as established by the municipality's appropriation ordinance, including any compensation for overtime which is included in the salary so established, but excluding any 'overtime pay', 'holiday pay', 'bonus pay', 'merit pay', or any other cash benefit not included in the salary so established." *Id.* § 3-125.1.

¶ 23 Pursuant to legislative authority, the IDOI has promulgated rules and regulations involving the administration of police pension funds. See *id.* § 1A-103 (giving IDOI authority to issue regulations governing municipal police and fire pension funds); see also 50 Ill. Adm. Code 4402 (regulations containing rules promulgated by the Director of Insurance regarding pensionable salary). Section 4402.30 of Title 50 of the rules describes "salary" as:

"any fixed compensation received by an employee of a municipality that participates in one of the pension funds established under Article 3 or 4 of the Illinois Pension Code, which has been approved through an appropriations ordinance of the municipality. Salary is received regularly and is attached to the rank or class to which the firefighter or police officer is assigned." 50 Ill. Adm. Code 4402.30 (1996).

That section further defines "fixed" as "a payment in a predetermined amount which can be determined through an examination of the appropriation ordinance, plans or agreements establishing salary." *Id.*

¶ 24 When calculating pensionable salary, the rules provide that:

"All salary, as defined in Section 4402.30 of this Part, shall be used in pension computations for purposes of determining the correct amount of employee contributions. The following types of pay are considered salary, in accordance with the definition in Section 4402.30:

8

(a) Base Pay

The basic salary attached to rank which is specified in the bargaining contract, municipal pay plan or any other document which establishes salary.

\* \* \*

(f) Specialty Rank

Compensation for services performed in positions beyond the basic rank, such as detective, juvenile officer, special instructor, shift commander, training officer, chief, emergency medical technician, paramedic, range officer or mechanic." *Id.* § 4402.35.

¶ 25        Our primary goal in construing a statute is to determine the intent of the legislature, and the plain and ordinary language of the statute is the best evidence of legislative intent. *Roselle Police Pension Board*, 232 Ill. 2d at 552. When a statute defines its own terms, those terms will be interpreted in accordance with the definitions provided. *Holland v. City of Chicago*, 289 Ill. App. 3d 682, 686 (1997). Absent definitions, the terms used in a statute will be given their plain and ordinary meaning. *Barnett v. Apple Inc.*, 2022 IL App (1st) 220187, ¶ 39. "[I]t is entirely appropriate to look to the dictionary to ascertain the plain and ordinary meaning of the term." *People v. Chapman*, 2012 IL 111896, ¶ 24.

¶ 26        Here, the plain language of section 3-125.1 states that a police officer's pension is based on the annual salary attached to the officer's rank as set forth in the municipality's appropriations ordinance. See *Smith v. Board of Trustees of the Westchester Police Pension Board*, 405 Ill. App. 3d 626, 632 (2010) (concluding that pensionable salary under the plain language of the Pension Code means "salary attached to [the officer's] rank as established in the municipality's appropriation[s] ordinance"). In this case, the Village paid Teppel a salary according to the

9

appropriations adopted by the Village board in the annual budget ordinance, which provided a line-item for administration salaries for the police chief and the deputy police chief. The police administration salaries approved in that ordinance included base pay salaries plus pick-up payments for the chief's pension and retiree insurance contributions. Pursuant to the Village personnel manual, the pension pick-up and retiree insurance pick-up payments were received by the police chief as "wages," the ordinary meaning of which is "a payment usually of money *for labor or services*." (Emphasis added.) Merriam-Webster Online Dictionary, https://www.meriam-webster.com/dictionary/wage (last visited June 25, 2025) [https://perma.cc/4TGL-LHNC]. The Village subsequently distributed these appropriations as compensation for services attached to the rank of police chief. Comparing these undisputed facts with the unambiguous language of section 3-125.1, we conclude that the pick-up payments are salary attached to Teppel's rank as police chief as established by the appropriations ordinance. In other words, they are pensionable salary.

¶ 27        The definitions promulgated in Title 50 of the rules further demonstrate that the Village pick-up payments should be included as salary in Teppel's pension calculation. Section 4402.30 of the rules defines "salary" as "any fixed compensation received by an employee *** which has been approved through an appropriations ordinance" and further defines "fixed" as "a payment in a *predetermined* amount." (Emphasis added.) 50 Ill. Adm. Code 4402.30 (1996). The Village pick-up payments here were predetermined, as set forth in the annual budget ordinance passed prior to the start of the fiscal year, and the payments were reported as earnings in the same fixed amount every other week. As Teppel's payroll deposit slips for 2020 showed, the amounts of pension pick-up and retiree insurance pick-up payments are identical in every bi-weekly paycheck. Moreover, section 4402.35 describes Teppel's pick-up payments as compensation for services in the

10

"specialty rank" of police chief. Thus, the pick-up payments fall within the meaning of "salary" under the administrative rules, as well as the Pension Code.

¶ 28                              1. *Fringe Benefits*

¶ 29          The Board argues that the pension and retiree insurance pick-up payments do not constitute pensionable salary because they are "fringe benefits," citing *Bell v. Purdue University*, 975 F.2d 422, 427-28 (7th Cir. 1992). In *Bell*, Purdue University (Purdue) discontinued the practice of making contributions to the pension plan on behalf of employees who had reached "normal retirement age" in response to federal legislation, resulting in a lawsuit filed by Purdue employees who charged the university with discrimination under the Age Discrimination in Employment Amendments of 1986 (Act) (29 U.S.C. § 623(a)(1), (2) (Supp. I 1989)). *Bell*, 975 F.2d at 423. Purdue claimed its actions fell under an exception to the age discrimination provisions of the Act, which allowed an employer to observe the terms of a *bona fide* employee benefit plan. *Id.* at 424. The employees maintained that the discontinued contributions were not part of a *bona fide* employee benefit plan but were instead wages, or at least "a wage substitute." *Id.* at 427.

¶ 30          The issue on appeal required the Seventh Circuit to address the meaning of an "employee benefit plan." The court compared Purdue's benefit plan to a fringe benefit and held that "[a] nonfringe benefit immediately compensates an employee for current services—job performance— while a fringe benefit ordinarily rewards the employee for longevity." (Internal quotation marks omitted.) *Id.* The court concluded that the documents in the record did not support the employees' contention that the contributions to the pension fund were a wage substitute and, instead, found them to be fringe benefits. *Id.* (finding that "[t]he record *** could not have led a rational trier of fact to conclude that the [plan] contributions were anything other than fringe benefits").

11

¶ 31　　　　The holding in *Bell* does not persuade us to conclude that the pick-up payments here are fringe benefits. First, the facts in this case are easily distinguishable. The Village did not discontinue payments to the pension fund, nor has it been accused of violating the federal Age Discrimination Act. Second, even if we adopted Bell's definition of a nonfringe benefit, the documents in this record demonstrate that the pick-up payments "immediately compensate[d]" Teppel for current services as police chief. Finally, unlike the contributions in Bell, the payments are specifically identified as wages in the Village personal manual.

¶ 32　　　　We also reject the Board's argument that the inclusion of the payments in chapter 7 of the personnel manual, entitled "Fringe Benefits," requires us to conclude that the payments are, in fact, fringe benefits. We are not confined to the parties' terminology in determining the legal character of compensation. See *Board of Trustees of the Firemen's Pension Fund of the City of Park Ridge v. Department of Insurance*, 109 Ill. App. 3d 919, 923 (1982). Instead, courts are required "to look 'to the facts rather than to the self-serving characterizations of the parties.' " *Id.* at 923-924 (quoting *Mississippi River Fuel Corp. v. Illinois Commerce Comm'n*, 1 Ill. 2d 509, 524 (1953)).

¶ 33　　　　　　　　　　　　　　　　　2. *Fixed Payments*

¶ 34　　　　Relying on the rules and regulations, the Board claims that the pension and retiree insurance pick-up payments are not "fixed" because they are not a predetermined amount that can be easily determined by reviewing the appropriations ordinance as held in *Village of Hanover Park v. Board of Trustees of the Hanover Park Police Pension Fund*, 2021 IL App (2d) 200380, ¶ 69.

¶ 35　　　　In *Hanover Park*, the village appealed the pension board's decision that holiday pay received by a group of retired police officers under a collective bargaining agreement (CBA) was pensionable salary. *Id.* ¶ 44. The circuit court affirmed the pension board's decision that the police

12

officers' holiday pay constituted pensionable salary attached to rank. *Id.* The appellate court reversed and held that holiday pay issued in accordance with the CBA was not "fixed" pursuant to the definition of that term in the rules and regulations because it was not a " 'predetermined amount which can be determined through an examination of the appropriation ordinance, plans, or agreements establishing salary.' " *Id.* ¶ 69 (quoting 50 Ill. Adm. Code 4402.30 (1996)). In reaching its decision, the court specifically noted that "the amount of holiday pay that an officer may receive under the CBA varies based on the officer's attendance record, among other factors." *Id.* ¶ 65. Specifically, the court rejected counsel's argument that: " 'All you've got to do is look at section 6.2 [in the CBA] and it will tell you that. And then look at the salary appendix of the agreement— it will tell you the hourly rate of the officer.' " *Id.* ¶ 66. The court held that "counsel's argument that the amount of an individual officer's holiday pay can be easily *determined* by reviewing the officer's work attendance history and other personnel records reinforces the conclusion that such pay is not in a *predetermined* amount." (Emphases in original.) *Id.* ¶ 69.

¶ 36    In this case, the payment amounts for pension and retiree insurance compensation do not vary. There are no factors that affect a police chief's eligibility to receive pick-up payments or the calculated amounts of the payments from one pay period to the next. The personnel manual clearly states that each department director—including the police chief—receives pick-up payments as wages, without stipulation or exception. Moreover, a predetermined amount was calculated and included in Teppel's administrative salary as established by the Village appropriations ordinance approved for the 2020-21 fiscal year. Simply put, the uncertainties posed by the terms of the agreement in *Hanover Park* do not exist here.

¶ 37    The Board's assertion that Cojulun's testimony demonstrates the pick-up payments are not "fixed" misses the mark. During the hearings, Cojulun explained that she "project[s]" the pension

13

pick-up payment by multiplying 9.91% by the base salary and then adds the base salary, plus the pension pick-up payment, plus the retiree insurance pick-up payment and multiplies that by 9.91% and "matches" those two numbers together. The Board claims that projecting and matching do not result in a fixed predetermined number. However, a fair reading of Cojulun's entire testimony demonstrates that she employed the described mathematical calculations to arrive at a *predetermined* number for the following fiscal year. Cojulun calculated the pension pick-up payments and retiree insurance payments and reported those numbers on the detail budget report and then used those numbers to calculate the total police administration salaries reported as a line-item in the budget ordinance. Therefore, the pick-up payments included in the budget report are a *predetermined* amount that can be easily identified by reviewing the appropriations ordinance. *Cf. id.* (finding that the CBA holiday pay could not be easily determined by reviewing the appropriations ordinance where the holiday pay was based on individual work performance and review of personnel records).

¶ 38                                3. *Thielen's Advisory E-mail*

¶ 39        Finally, we disagree with the Board's suggestion that we should give deference to Thielen's advisory e-mail in which he stated that "the reimbursement of these employee expenses are not pensionable salary for purposes of the Illinois Pension Code." We need only defer to an agency's interpretation if the statute is ambiguous, which we have not found it to be. See *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 2016 IL App (1st) 150425, ¶ 19 (commission's construction of an unambiguous statute is not binding on the court, and the court need not defer to the agency's interpretation). Additionally, "[w]hile courts afford considerable deference to an agency's interpretation of [an ambiguous] statute that it administers, that interpretation is not binding and will be rejected if erroneous." *People ex rel. Birkett v. City of Chicago*, 202 Ill. 2d 36,

48 (2002). In this instance, Thielen arrived at his conclusion that the "reimbursements" were not pensionable salary after considering the intervenor's self-servicing e-mail inquiry, which failed to include relevant documentation. Having been denied the opportunity to review the 2020-21 budget ordinance, the detail budget report, and Cojulun's testimony, we find no reason to adopt Thielen's interpretation of the statute.

¶ 40 We conclude that the pension and retiree insurance pick-up payments Teppel received are pensionable salary under the Pension Code and therefore reverse the finding of the Board. We affirm the circuit court's ruling and remand the matter to the Board to recalculate Teppel's pension as of August 1, 2020, using a salary of $173,148.12.

¶ 41                                    III. CONCLUSION

¶ 42 The judgment of the circuit court of Will County is affirmed.

¶ 43 Circuit court judgment affirmed.

¶ 44 Board decision reversed.

15

*Teppel v. Board of Trustees of the Bolingbrook Police Pension Fund*,
**2025 IL App (3d) 240248**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Will County, No. 23-MR-73; the Hon. John C. Anderson, Judge, presiding. |
| **Attorneys for Appellant:** | Jeffrey Goodloe, of Puchalski Goodloe LLC, of Libertyville, for appellant. |
| **Attorneys for Appellee:** | Jerome F. Marconi, of Riverside, for appellee. |