2025 IL App (1st) 240338
Opinion filed December 24, 2025

Fourth Division

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT
_____

| | | |
|---|---|---|
| LIEUTENANT MICHAEL VOKAC, | ) | |
| | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| | ) | Cook County. |
| v. | ) | |
| | ) | Nos. 22-CH-09755 |
| THE BERWYN POLICE PENSION FUND and THE | ) | 23-CH-08001 |
| BOARD OF TRUSTEES OF THE BERWYN POLICE | ) | |
| PENSION FUND, | ) | Honorable |
| | ) | Neil H. Cohen, |
| Defendants-Appellees. | ) | Judge Presiding. |

_____

JUSTICE LYLE delivered the judgment of the court, with opinion.
Presiding Justice Navarro and Justice Ocasio concurred in the judgment and opinion.

**OPINION**

¶ 1     This is an action for administrative review of a decision by the Board of Trustees of the

Berwyn Police Pension Fund (Board), awarding plaintiff, Michael Vokac, line-of-duty disability

pension benefits pursuant to section 3-114.1 of the Illinois Pension Code (40 ILCS 5/3-114.1 (West

2020)) based on an injury he suffered while on duty on March 15, 2020. The Board awarded Mr.

Vokac disability pension benefits retroactive to May 16, 2021, which was the day after Mr.

Vokac's benefits pursuant to the Public Employee Disability Act (Act) (5 ILCS 345/1 (West

2020)) ended. Mr. Vokac filed a complaint for administrative review in the circuit court of Cook County, seeking to overturn the Board's decision as to the effective date and the salary the Board used to determine the amount of the disability pension benefit. Mr. Vokac sought to have his benefits commence on January 19, 2022, the date the Board rendered its decision, which would entitle him to have his pension benefit calculated based on a higher salary than the salary used by the Board. The circuit court remanded, and following a second hearing, the Board reaffirmed its decision as to the effective date and the salary. Mr. Vokac sought administrative review of the Board's decision and order on remand and the circuit court affirmed.

¶ 2 On appeal to this court, Mr. Vokac maintains that the Board erred in finding May 16, 2021, as the effective date for his benefits and in determining the amount of his benefit. Mr. Vokac maintains that under section 3-114.1, he cannot be found to be "suspended" from duty until the Board determines, based on the assessment of three independent medical experts, that he is disabled. He asserts that his benefit should begin on the date the Board makes that determination. He further contends that the Board erred in rejecting his offer to purchase creditable service time pursuant to section 3-110(a) of the Pension Code. For the reasons that follow, we affirm the decision of the Board and the decision of the circuit court.

¶ 3                                    I. BACKGROUND

¶ 4 Mr. Vokac was hired as a police officer by the City of Berwyn (Berwyn) on August 26, 1996. On March 15, 2020, while on duty, Mr. Vokac suffered injuries to his left elbow, left shoulder, and low back while attempting to subdue a combative individual. Mr. Vokac underwent treatment for his injuries, which included multiple surgeries and physical therapy. Mr. Vokac did not return to work in any capacity after March 15, 2020. On October 7, 2021, Mr. Vokac's doctor designated him at maximum medical improvement with respect to his left shoulder and placed

permanent work-related restrictions to avoid physical altercations. While Mr. Vokac was undergoing treatment, he began receiving Act benefits from the city. The Act benefits paid Mr. Vokac at his full salary and pension contributions were deducted from the payments. Those benefits expired on May 16, 2021, after which Mr. Vokac began receiving temporary total disability benefits (TTD) benefits pursuant to the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 2020)). While he was receiving TTD benefits, Mr. Vokac sent checks to the Board. Mr. Vokac represented that the checks were intended to pay for his pension contributions during the period he was receiving TTD.

¶ 5    On January 15, 2021, Mr. Vokac submitted an application for line-of-duty disability pension benefits to the Board pursuant to section 3-114.1 of the Pension Code (40 ILCS 5/3-114.1 (West 2020)). Section 3-114.1 provides:

> "If a police officer as the result of sickness, accident or injury incurred in or resulting from the performance of an act of duty, is found to be physically or mentally disabled for service in the police department, so as to render necessary his or her suspension or retirement from the police service, the police officer shall be entitled to a disability retirement pension equal to the greatest of (1) 65% of the salary attached to the rank on the police force held by the officer at the date of suspension of duty or retirement, (2) the retirement pension that the police officer would be eligible to receive if he or she retired (but not including any automatic annual increase in that retirement pension), or (3) the pension provided under subsection (d), if applicable." *Id.*

The Board selected three physicians to conduct independent medical examinations of Mr. Vokac. The physicians determined that Mr. Vokac's disability was permanent and that he would be unable to return to full and unrestricted police duty.

¶ 6 After a hearing on January 19, 2022, the Board awarded Mr. Vokac line-of-duty disability pension benefits effective May 16, 2021, without prejudice on an interim basis, subject to any applicable TTD offsets. The Pension Board found that Mr. Vokac was disabled from full and unrestricted duties as a police officer rendering necessary his suspension from police service.

¶ 7 Following the Board's decision, Mr. Vokac filed a complaint for administrative review in the circuit court of Cook County, contending that the Board erred in determining the date that his disability pension benefits should commence and based the amount of his pension benefits on an incorrect salary. Mr. Vokac asserted that his date of disability should be January 19, 2022, rather than May 16, 2021, as determined by the Board. Under the Board's determination, Mr. Vokac's disability pension benefits were calculated based on a salary of $129,244.07. Using Mr. Vokac's preferred effective date, his benefit would be based on a salary of $140,372.75.

¶ 8 Shortly after Mr. Vokac filed his complaint for administrative review, the Board amended its administrative rules and regulations to include section 723. Section 723 is titled "Determination of the Effective Date of Disability Pensions" and provides:

> "The purpose of this provision is to ensure that an officer's disability pension benefits will be paid based upon the proper salary attached to the officer's rank and the date of the officer's suspension or retirement from police service and to ensure that the officer does not receive both disability benefits at the same time as receipt of other statutory benefits, other than those permitted by law. Creditable service is the time served by a member of the Berwyn Police Department.
>
> For purposes of determining the effective date of an officer's suspension or retirement from police service for purposes of § 3-114.1 or 3-114.2, the Board will consider the following factors, including but not limited to:

a)  The date following the officer's exhaustion of Public Employee
    Disability Act benefits, or

b)  The date following exhaustion of limited or light duty assignments
    provided for by the Police Department's policy, or

c)  The date following removal from the municipality's payrolls, or

d)  Any other relevant factors the Board considers probative.

Under no circumstances will an officer be awarded disability benefits based upon a salary which the officer never received and never made officer pension contributions as required by § 3-125.1. The officer's salary for pension purposes shall be based upon the salary attached to the officer's rank as established by the Pension Board using the criteria contained in subsections (a) through (d) as set forth above. Offsets for corresponding benefits payable under the Workers' Compensation or Workers' Occupational Diseases Act, as required by § 3-114.5 shall reduce the amount of disability benefits payable to the officer or line of duty disability benefits under § 3-114.1."

¶ 9    On January 30, 2023, the circuit court remanded the matter to the Board to determine the date of suspension of duty and the amount of line-of-duty disability benefit due to Mr. Vokac based upon the determined date of suspension. The court further ordered that the Board take additional evidence related to the case.

¶ 10    Following the hearing on remand, the Board issued a decision and order on remand. The Board determined that the last day Mr. Vokac performed full and unrestricted duty as a police officer for Berwyn was the date of his injury on March 15, 2020. Thereafter, Mr. Vokac received full salary and benefits pursuant to the Act until May 16, 2021. After the termination of his Act benefits, Mr. Vokac received TTD benefits until May 4, 2022, subject to the offset in section 3-

114.5 of the Pension Code (40 ILCS 5/3-114.5 (West 2020)). The Board reviewed the opinions of the three independent medical examiners who determined that Mr. Vokac's disability was permanent, and he would be unable to return to full and unrestricted police duty.

¶ 11    The Board also reviewed the collective bargaining agreement between Berwyn and the Illinois Municipal Police Association Local No. 1 that was in effect from July 1, 2019, to December 31, 2022 (CBA). Section 19.5 of the CBA concerns "Disability-Eligible Officers" and provides:

> "Officers who are determined by a physician to be unable to perform their full duties and who remain medically restricted after exhausting any approved FMLA, PEDA or other leave specifically provided in this Agreement, must file for disability pension or resign under the conditions described below. If the employee fails to file for disability pension as outlined above, the Chief may file charges for dismissal immediately after expiration of PEDA or other twelve (12) month leave."

The Board also examined a Memorandum of Agreement that was entered into between Berwyn and the Illinois Municipal Police Association Local No. 1 on April 21, 2021 (MOA). Section 19.10 of the MOA is titled "Injury on Duty" and provides:

> "A bargaining unit member injured on duty may be entitled to paid leave benefits pursuant to the Illinois Public Employee Disability Act 'PEDA' (5 ILCS 345/1, *et seq.*). If, upon exhaustion of these benefits, the member is medically unable to return to full, unrestricted duty, the City shall fill that member's position by hiring and/or promotion, including but not limited to, the promotion of a patrol officer to the rank of Sergeant, or the promotion of a Sergeant to Lieutenant (until the expiration of the current promotional list.) The bargaining unit member who has exhausted PEDA will remain employed by the City and

may be eligible to additional benefits pursuant to the Illinois Workers' Compensation Act (820 ILCS 305/1 *et seq.*) or other rights. When the injured officer is able to return to full, unrestricted duty, they will be immediately reinstated at the rank at which there were when PEDA was exhausted. The department agrees to maintain the additional manpower until the next retirement, resignation, or termination, after which time it would not replace that additional position. In this limited circumstance, the 60-day promotional requirement in Section 15.4 would not apply. If the member is unable to return to full, unrestricted duty after their injury, they will be eligible for retirements and/or pension benefits at the rank which they held at the date that PEDA benefits were exhausted.

This Section is not intended to add to, subtract, or otherwise modify benefits or rights granted to bargaining unit members under the Illinois Public Employee Disability Act, the Illinois Workers' Compensation Act, the Police Pension Code, or any other statutory or constitutional benefit, but is instead intended to describe the effect that these rights may have upon the Collective Bargaining Agreement. Promotions pursuant to this provision are subject to the conditions and requirements set forth within the Collective Bargaining Agreement."

¶ 12    The Board further reviewed various sections of the Pension Code, including section 3-110, "Creditable Service." *Id.* § 3-110(a). Under the Pension Code, creditable service is the "time served by a police officer as a member of a regularly constituted police force of a municipality." *Id.*

"In computing creditable service[,] furloughs without pay exceeding 30 days shall not be counted, but all leaves of absence for illness or accident, regardless of length, and all

periods of disability retirement for which a police officer has received no disability pension payments under this Article shall be counted." *Id.*

The Board also considered section 723 of its amended rules and regulations.

¶ 13 After examining the authority discussed above, the Board determined that Mr. Vokac was suspended from duty due to disability on May 16, 2021. The Board first observed that there was no case law to offer guidance on the date an officer is suspended from duty under section 3-114.1 of the Pension Code. As such, the Board adopted section 723 of its own rules and regulations "to provide guidance to the Pension Board to determine the appropriate date." The Board noted that the first factor was the date the officer exhausted his benefits under the Act. In this case, Mr. Vokac received his full salary and benefits under the Act until May 15, 2021.

¶ 14 The next factor was the date of exhaustion of any light duty assignments provided by the officer's police department. In this case, Mr. Vokac had not been offered any light duty position after his injury. The third factor under section 723 was the date that the officer was removed from the municipality's payroll. The Board determined that the last day Mr. Vokac received salary and benefits from Berwyn was the last day he received Act benefits on May 16, 2021. After Mr. Vokac's Act benefits were terminated, he began receiving TTD benefits under the Illinois Workers' Compensation Act. The Board determined that Mr. Vokac was not on the municipality's payroll while he was receiving TTD benefits because TTD benefits are paid by the workers' compensation insurance carrier, not Berwyn.

¶ 15 The Board also considered the CBA and the MOA. Mr. Vokac applied for disability and did not resign as provided in section 19.5 of the CBA. The Board found that under section 19.10 of the MOA, Berwyn considered Mr. Vokac removed from the city's payroll after the exhaustion

of his Act benefits on May 16, 2021, which the Board determined meant that Mr. Vokac was suspended from duty on that date.

¶ 16    The Board next turned to the definition of "disability" within article III of the Pension Code. The Pension Board noted that the legislature did not provide a "clear and concise" definition of "disability" in article III, and therefore, the Board looked to other provisions of the Pension Code to determine the legislature's intent. The Board observed that "Disability" was defined in article V of the Pension Code as "[a] condition of physical or mental incapacity to perform any assigned duty or duties in the police service." *Id.* § 5-115. The Board found that this definition of disability supported its conclusion that Mr. Vokac was suspended from duty due to disability on May 16, 2021.

¶ 17    The Board also examined the dictionary definition of the word "suspension" to determine its meaning as used in section 3-114.1 of the Pension Code. The Board noted that it had no authority or control over disciplinary matters, so it determined that the word "suspension" in that section must refer to the date an applicant ceases performing any assigned police duties and no longer receives any salary from the city.

¶ 18    The Board rejected Mr. Vokac's attempt to "purchase" creditable service for the period of May 15, 2021, to January 19, 2022. The Board noted that in order to qualify for creditable service, Mr. Vokac had to meet the criteria of section 3-110(a) of the Pension Code. *Id.* § 3-110(a). The Board observed that Mr. Vokac was not furloughed during that period and did not apply for or receive a leave of absence. The Board found that Mr. Vokac could receive creditable service for this time period only if it was a period of disability retirement for which he did not receive disability payments. The Board determined that Mr. Vokac was not entitled to creditable service for that time period because the Board's original decision and order awarded Mr. Vokac line-of-

duty disability pension benefits retroactive to May 16, 2021, meaning that Mr. Vokac was receiving disability payments during that period.

¶ 19    The Board continued:

"[Mr. Vokac] fails to point to any specific statutory authority that would allow him to purchase creditable service for the period of May 15, 2021 through January 19, 2022. Should the Pension Board accept [Mr. Vokac's] theory, nothing would prevent any officer who has been removed from the City's payrolls from purchasing creditable service for a time after the officer is no longer performing any assigned police duties for the Berwyn Police Department and have their retirement or disability benefits calculated on a salary the officer never received and never made the required 9.91% police officer contributions."

The Board recognized that Mr. Vokac's motivation was clear. Under the Board's findings, Mr. Vokac's disability benefit would be calculated based on a salary of $129,244.07. If, however, Mr. Vokac were able to purchase creditable service from the time period specified, his benefits would be based on a salary of $140,372.75. The Board rejected Mr. Vokac's attempt to have his pension benefits calculated based on an "artificial salary," which he was never paid and never received.

¶ 20    Mr. Vokac filed a complaint for administrative review of the Board's decision and order on remand. Mr. Vokac maintained that the Board's decision ignored the exhibits he presented that demonstrated that he should be awarded disability benefits effective January 19, 2022, the date of the original hearing before the Board. Mr. Vokac contended that because an officer cannot be awarded a disability pension until the officer is examined by three independent physicians and the Board cannot determine the date of disability until those examinations are conducted and the evidence is presented to the Board at a hearing. Mr. Vokac maintained that the Pension Code did not grant the Board the authority to make the date of disability retroactive to a date prior to the

hearing. Mr. Vokac further contended that the Board erred in rejecting his attempt to "buyback" the time period he was receiving TTD benefits where he tendered checks to the Board for his pension contributions based on his rate of pay. Mr. Vokac asserted that the Board's newly enacted section 723 was contrary to statute and did not limit his ability to purchase creditable time while he was receiving TTD benefits.

¶ 21 In response, the Board asserted that Mr. Vokac was attempting to manipulate the Pension Code so that he could receive increased pension benefits based on a salary that he never received during his employment. The Board contended that it had the independent authority to determine the effective date of Mr. Vokac's disability pursuant to section 3-114.1 of the Pension Code. The Board maintained that May 16, 2021, was the date that Mr. Vokac was suspended from duty due to disability because that is the last day that he received Act benefits paid by Berwyn. After that date, Mr. Vokac no longer received compensation from Berwyn and was removed from the payroll. The Board asserted that Mr. Vokac's contention that it lacked the authority to make a disability award effective retroactive to a date prior to the disability hearing lacked any citation to authority and would create an "absurd result" where officers could receive inflated disability benefits by delaying the hearing and rejecting disability benefits during a period where they were disabled.

¶ 22 The Board further contended that Mr. Vokac's attempt to buy back creditable service lacked any citation to authority and he failed to justify an effective date of January 19, 2022. The Board also asserted that Mr. Vokac's attempt to purchase creditable time was contravened by the express terms of section 3-110(a) of the Pension Code because he was receiving disability pension payments during the time he sought to purchase.

¶ 23 The circuit court found that the Board's rulings that Mr. Vokac was suspended from duty due to disability on May 16, 2021, and that Mr. Vokac was not entitled to purchase creditable

service under section 3-110(a) of the Pension Code were not clearly erroneous and affirmed the Board's administrative decisions.

¶ 24    Mr. Vokac filed a timely notice of appeal from the circuit court's order. We find that we have jurisdiction to consider the merits of this appeal pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and Rule 303 (eff. July 1, 2017), governing appeals from final judgments entered by the circuit court in civil cases.

¶ 25                                II. ANALYSIS

¶ 26    On appeal, Mr. Vokac contends that the Board erred in finding May 16, 2021, as the date of suspension of duty due to disability and in determining the amount of his disability pension benefits. Mr. Vokac asserts that the Board's determination that the date of suspension was the date he was removed from Berwyn's payroll lacks support in the record or in the plain language of the Pension Code. Mr. Vokac maintains that, under the Pension Code, the Board does not have the authority to make the effective date of disability retroactive to a date before the hearing before the Board. Mr. Vokac contends that, therefore, the earliest date the Board could have found he had been suspended from duty was January 19, 2022. Mr. Vokac further contends that the Board erred in determining the amount of his line-of-duty disability benefit where he was entitled to creditable service for the period between the end of his benefits under the Act and the Board's initial decision and order.

¶ 27                          A. Standard of Review

¶ 28    In administrative cases, we review the decision of the administrative agency, not the circuit court. *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 531 (2006). Under section 3-148 of the Pension Code (40 ILCS 5/3-148 (West 2020)), judicial review of a police pension board is governed by the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West

2020)). *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 504 (2007). Our standard of review depends upon whether the question presented is a question of fact, a question of law, or a mixed question of law and fact. *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 390 (2001). In this case, there is no dispute as to the underlying facts, and the issues presented are ones of statutory interpretation and mixed questions of fact and law. The examination of the legal effect of a given set of facts involves a mixed question of fact and law, which is subject to the clearly erroneous standard of review. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 211 (2008). An administrative agency's decision is deemed "clearly erroneous" when we are left with the "definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted). *Id*. On the other hand, questions of statutory interpretation are purely legal issues, which we review *de novo*. *Mattis v. State Universities Retirement System*, 212 Ill. 2d 58, 76 (2004). In addition to the standards of review, we are guided by the principle that pension statutes are to be liberally construed in favor of the rights of the pensioner. *Shields v. Judges' Retirement System of Illinois*, 204 Ill. 2d 488, 494 (2003).

¶ 29        B. Section 723 of the Board's Administrative Rules and Regulations

¶ 30    As both parties recognize, there is a dearth of authority on the question of when a police officer is suspended from duty due to disability and when the officer's disability pension benefits should commence under section 3-114.1 of the Pension Code. This prompted the Board to adopt section 723 of its rules and regulations "to provide guidance to the Pension Board to determine the appropriate date." While we offer no opinion about the propriety of the newly adopted section 723 in future cases, we find that the Board's application of section 723 in Mr. Vokac's case was erroneous.

- 13 -

¶ 31   As noted, the Board adopted section 723 after Mr. Vokac filed his initial complaint for administrative review. Thus, his application for line-of-duty disability benefits was already pending at the time section 723 was adopted. The Board therefore should have addressed whether section 723 should have applied retroactively to Mr. Vokac's already-filed application.

¶ 32   It is well-settled that "[a]dministrative rules and regulations have the force and effect of law and must be construed under the same standards that govern the construction of statutes." *Cigna v. Illinois Human Rights Comm'n*, 2020 IL App (1st) 190620, ¶ 25 (citing *People ex rel. Madigan v. Illinois Commerce Comm'n*, 231 Ill. 2d 370, 380 (2008)). Therefore, in determining whether section 723 should apply retroactively to Mr. Vokac's pending application, we employ the same analysis as when determining whether a statute or statutory amendment should apply retroactively. In determining when a statute should apply retroactively, Illinois courts use the approach set forth by the United States Supreme court in *Landgraf v. USI Film Products*, 511 U.S. 244 (1994). *Doe A. v. Diocese of Dallas*, 234 Ill. 2d 393, 405 (2009).

> "The *Landgraf* analysis consists of multiple steps. The threshold inquiry is whether the legislature has expressly prescribed the temporal reach of a statute. If it has, the expression of legislative intent must be given effect absent a constitutional prohibition. If, however, the statute contains no express provision regarding its temporal reach, the court must determine whether the new statute would have retroactive effect, keeping in mind the general principle that prospectivity is the appropriate default rule. In making this determination, a court will consider whether retroactive application of the new statute will impair rights a party possessed when acting, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If retrospective

application of the new law has inequitable consequences, a court will presume that the statute does not govern absent clear legislative intent favoring such a result." *Id.*

Our supreme court had held, however, that Illinois courts need never go beyond the threshold step of the *Landgraf* test because the legislature will always have clearly indicated the temporal reach of an amended statute. *Id.* at 406. That is, because section 4 of the Statute on Statutes (5 ILCS 70/4 (West 2020)) acts as a "clear legislative directive as to the temporal reach of statutory amendments and repeals when none is otherwise specified: those that are procedural may be applied retroactively, while those that are substantive may not." *Allegis Realty Investors v. Novak*, 223 Ill. 2d 318, 331 (2006). This principle applies to civil as well as criminal enactments. *Id.* Notably, the *Landgraf* court cited its decision in *Bowen v. Georgetown University Hospital*, 488 U.S. 204 (1988) for the proposition that " 'administrative rules will not be construed to have retroactive effect unless their language requires this result.' " *Landgraf*, 511 U.S. at 264 (quoting *Bowen*, 488 U.S. at 208).

¶ 33     In this case, section 723 does not expressly provide that it is intended to be applied retroactively to pending applications for disability pension benefits. Typically, when the legislature intends for a statute to be given retroactive effect, it includes language such as, " '[t]his Section applies to all causes of action that have accrued, will accrue, or are currently pending before a court of competent jurisdiction, including courts of review.' " *Lazenby v. Mark's Construction, Inc.*, 236 Ill. 2d 83, 95 (2010) (quoting 425 ILCS 25/9f (West 2004)). The Board could have included similar temporal language when adopting section 723, but it did not.

¶ 34     Because section 723 does not contain an express provision regarding its temporal reach, we will next examine whether the section is substantive or procedural in nature. *White v. Retirement Board of the Policemen's Annuity & Benefit Fund of Chicago*, 2014 IL App (1st)

132315, ¶ 32. "A substantive amendment establishes, creates or defines rights whereas [p]rocedure is the machinery for carrying on the suit." (Internal quotation marks omitted.) *Id.* If section 723 is substantive, it may not be applied retroactively. *Id.* In this case, section 723 is substantive in nature as it serves to establish, create, or define rights of officers seeking disability pension benefits. Thus, because section 723 does not contain an express provision providing that it applies retroactively, and because the section is substantive in nature, it was improper for the Board to retroactively apply section 723 to Mr. Vokac's application for benefits. See *id.* ¶¶ 27-33 (holding that the pension board erred in applying an amended version of the Pension Code to the firefighter applicant's disability pension application where the application was filed before the effective date of the amendment).

¶ 35                    C. The Board Did Not Err in
                       Finding May 16, 2021, as
                    the Date of Suspension of Duty

¶ 36    This conclusion, however, does not necessitate a finding that the Board erred in determining that Mr. Vokac was suspended from duty on May 16, 2021. Setting aside the Board's discussion of section 723, the Board's decision on remand can be summarized as follows. The Board determined that the "date of suspension" as used in section 3-114.1 meant the date that the officer ceased performing any police duties and no longer received "any salary" from the city. Mr. Vokac received Act benefits until May 16, 2021, and received TTD benefits after his Act benefits expired. Act benefits are paid by the city, whereas TTD benefits are paid by the city's workers' compensation insurance carrier. Therefore, the Board determined that Mr. Vokac stopped receiving any salary from Berwyn on the date his Act benefits expired. The Board concluded that Mr. Vokac's disability pension benefits should be calculated based on his salary attached to rank on that date and that his pension benefit payments should commence on that date.

¶ 37 We will first address the Board's determination that Mr. Vokac's disability benefit should be calculated based on his salary on May 16, 2021. Section 3-114.1 of the Pension Code provides that a line-of-duty disability pension is to be based on the salary attached to the rank that the officer held "at the date of suspension of duty or retirement." 40 ILCS 5/3-114.1(a) (West 2020). Section 3-125.1 of the Pension Code defines "salary" as:

> "the annual salary, including longevity, attached to the police officer's rank, as established by the municipality's appropriation ordinance, including any compensation for overtime which is included in the salary so established, but excluding any 'overtime pay', 'holiday pay', 'bonus pay', 'merit pay', or any other cash benefit not included in the salary so established." *Id.* § 3-125.1.

The Illinois Department of Insurance has promulgated rules and regulations for the administration of police pension funds. *Teppel v. Board of Trustees of the Bolingbrook Police Pension Fund*, 2025 IL App (3d) 240248, ¶ 23. Section 4402.30 of Title 50 of the Illinois Administrative Code defines "salary" as:

> "any fixed compensation received by an employee of a municipality that participates in one of the pension funds established under Article 3 or 4 of the Illinois Pension Code, which has been approved through an appropriations ordinance of the municipality. Salary is received regularly and is attached to the rank or class to which the firefighter or police officer is assigned." 50 Ill. Adm. Code 4402.30 (1996).

That section further defines "fixed" as "a payment in a predetermined amount which can be determined through an examination of the appropriation ordinance, plans or agreements establishing salary." *Id.* Salary for pension purposes includes an employee's base pay, overtime pay, and holiday pay. 50 Ill. Adm. Code 4402.35 (1996). Some examples of non-salary

compensation for the purpose of calculating pension benefits are compensation for accumulated vacation, sick, or personal time, food allowances, and compensation for extraordinary deeds or accomplishments. 50 Ill. Adm. Code 4402.40 (1996).

¶ 38    The Board, vested with the exclusive control and management of the pension fund, has the statutory authority to determine what an applicant's salary should be for the purpose of calculating his retirement benefits. *Sedlock v. Board of Trustees of the Police Pension Fund of Ottawa*, 367 Ill. App. 3d 526, 528-29 (2006) (citing 40 ILCS 5/3-132 (West 2004)). Here, the Board was tasked with determining the date Mr. Vokac was suspended from duty due to disability so that it could determine which salary to use in determining the amount of his pension benefit payments. The Board first looked to article 5 of the Pension Code to define "disability" as "[a] condition of physical or mental incapacity to perform any assigned duty or duties in the police service." 40 ILCS 5/5-115 (West 2020). Section 3-114.1 provides that the amount of the disability benefit should be based on the applicant's salary as of the date of "suspension of duty," but the statute does not define the word "suspension." As the statute itself does not provide a definition for "suspension," it is "entirely appropriate to look to the dictionary to ascertain the plain and ordinary meaning of the term." *People v. Chapman*, 2012 IL 111896, ¶ 24. The Pension Board in this case looked to Merriam Webster's Dictionary to define "suspension" as the word is used in section 3-114.1(a), concluding that it referred to the date an applicant no longer performed any assigned police duties and no longer received any salary from the municipality. Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/suspension (last visited Dec. 9, 2025)

[https://perma.cc/KK9M-XVT2]. We find that a similar interpretation of the word "suspension" is supported by the definition of the word in Black's Law Dictionary[1], which includes:

"1. The act of temporarily delaying, interrupting, or terminating something <suspension of business operations> <suspension of a statute>.

2. The state of such delay, interruption, or termination <corporate transfers were not allowed because of the suspension of business>.

3. The temporary deprivation of a person's powers or privileges, esp. of office or profession; esp., ***. ***

4. The temporary withdrawal from employment, as distinguished from permanent severance <suspension from teaching without pay>." Black's Law Dictionary (12th ed. 2024)

¶ 39     Pursuant to this definition, the Board could have reasonably concluded that Mr. Vokac was "suspend[ed] of duty" due to disability on either the last day he worked or on the date he stopped receiving any salary from Berwyn. See *Kosakowski v. Board of Trustees of the City of Calumet City Police Pension Fund*, 389 Ill. App. 3d 381, 386-87 (2009) (finding that the pension board's interpretation of "at the date of suspension of duty" in section 3-114.1 as the last day the plaintiff worked did not constitute an error pursuant to section 3-144.2 of the Pension Code). In this case, Mr. Vokac did not return to work after March 15, 2020. He then received Act benefits until May 15, 2021. The Board determined that Mr. Vokac was suspended from duty on May 16, 2021, the

---

[1]Despite relying on Merriam Webster's Dictionary in its decision and order on remand, the Board cites to the definition in Black's Law Dictionary in its brief before this court. We find that either dictionary definition supports the conclusion reached by the Board.

day after his Act benefits expired because, as of that date, he was unable to return to full and unrestricted duty, and he no longer received a salary from the municipality.

¶ 40    The Board's determination here that Act benefits constitute "salary" is supported by both the plain statutory language and the sections of the Administrative Code discussed above. The Act statute provides that an eligible employee who is injured in the line of duty "shall continue to be paid by the employing public entity on the same basis as he was paid before the injury." 5 ILCS 345/1 (West 2020).Therefore, while receiving Act benefits, Mr. Vokac continued to receive his "annual salary, including longevity, attached to the police officer's rank, as established by the municipality's appropriation ordinance" (40 ILCS 5/3-125.1 (West 2020)), remained an employee of the municipality, the amount of the benefit was attached to his rank, and the compensation was "fixed" and "regular" (50 Ill. Adm. Code 4402.30 (1996)).

¶ 41    The Board determined that after Mr. Vokac's Act benefits expired, the TTD benefits he received did not qualify as "salary" because they were not paid by the city, but rather by the city's workers' compensation insurance carrier. While the Board did not cite any authority to support this distinction, we find that the Board's determination in this regard is entitled to deference as with its determination of an applicant's pensionable salary. See *Sottos v. Firefighters' Pension Fund of Moline*, 2017 IL App (3d) 160481, ¶¶ 11, 18 (finding that the applicant firefighter was "on the municipality's payroll" during the period he was receiving TTD benefits "from the City"). In any event, as discussed in further detail below, TTD benefits are not intended to compensate the employee for the "full" amount of their salary, and the Pension Code specifically provides for an offset of disability pension benefits based on a police officer's receipt of benefits under the Workers' Compensation Act. 40 ILCS 5/3-114.5 (West 2020).

¶ 42 After determining that the amount of Mr. Vokac's disability pension benefit should be based on his salary attached to rank as of May 16, 2021, the Board also determined that his pension benefit payments should commence retroactively on that date. Mr. Vokac asserts that his pension benefits should commence on January 19, 2022, and his disability pension payments should be based on his salary as of that date. January 19, 2022, was the date of the Board's original hearing in this matter and the date that the Board rendered its original decision and order. Mr. Vokac asserts that his benefit could not be set to commence at a date before the hearing because the Board determined at the hearing that he was disabled and suspended, which was a prerequisite to his receipt of benefits under section 3-114.1. He also points out that following the hearing before the Board, he returned his uniform and badge and received a form from the Berwyn Police Department listing him as retired as of January 19, 2022.

¶ 43 First, Mr. Vokac's assertion that the Board is unable to "make the opinion of disability to a date prior to the hearing" lacks support in the record and in the law. Simply put, in every case examined by this court concerning the commencement date of pension disability payments, the pension board has determined that the effective date of the benefit is a date prior to the hearing. See, *e.g.*, *Nowak v. City of Country Club Hills*, 2011 IL 111838 (disability pension benefits awarded retroactive to the day after the plaintiff stopped receiving his "full salary"); *Philpott v. Board of Trustees of the City of Charleston Firefighters' Pension Fund*, 397 Ill. App. 3d 369 (2010) (disability pension benefits awarded retroactive to the date the plaintiff filed his application for benefits); *Olson v. City of Wheaton Police Pension Board*, 153 Ill. App. 3d 595 (1987) (disability pension benefits awarded retroactively to the last date the plaintiff received "full pay"). The retroactive commencement of disability pension benefit payments makes sense under the procedures of the Pension Code. Injured officers can apply for disability pension benefits only

after they are injured. 40 ILCS 5/3-114.1(a), (b) (West 2020). The purpose of a disability pension is to compensate the police officer for the period of time where they are "disabled" and therefore unable to work. *Id.*; see *id.* § 5-115 (defining "disability" as "[a] condition of physical or mental incapacity to perform any assigned duty or duties in the police service"). The hearings before a pension board must necessarily reflect on past circumstances to determine if an officer was disabled at a date prior to the hearing to determine their eligibility for a disability pension.

¶ 44    Further, the Berwyn Police Department's designation of Mr. Vokac as retired as of January 19, 2022, has no bearing on the Board's determination of disability. The Board and the municipality are distinct legal entities, and the city's removal and retirement decisions are governed by the Illinois Municipal Code (65 ILCS 5/10-2.1-17 (West 2020)), not the Pension Code. The Board's determination of disability and the effective date of pension benefits are separate and distinct from Berwyn's retirement determination. See *Dowrick v. Village of Downers Grove*, 362 Ill. App. 3d 512, 520-21 (2005).

¶ 45    The parties identify one decision of this court that directly addressed the issue of the effective date of disability pension payments. In *Olson*, 153 Ill. App. 3d at 596, the plaintiff police officer appealed a decision of the City of Wheaton Police Pension Board (Wheaton Board) awarding him a "not-on-duty" disability pension pursuant to section 3-114.2 of the Pension Code rather than a line-of-duty disability pension pursuant to section 3-114.1. The plaintiff filed his application for disability pension benefits in August 1985. *Id.* He testified at the hearing that he "quit work" on August 1, 1985. *Id.* at 597. On December 11, 1985, the Wheaton Board awarded him a not-on-duty disability pension effective November 11, 1985. *Id.* On appeal, the plaintiff contended, *inter alia*, that

"a rule established by the [Wheaton] board, which sets the effective date of a disability

pension as the latter of the date the applicant is removed from the payroll or the date the

application was received by the board, violates section 3-114.1 of the Illinois Pension Code

[citation], which states that a disabled officer 'shall be entitled to a disability retirement

pension at 65% of the salary attached to the rank on the police force *** at the date of

suspension of duty or retirement.' " *Id.* at 600.

The plaintiff argued that, under the plain language of section 3-114.1, his disability pension should

have started August 1, 1985, the date he ceased working, rather than November 11, 1985, as

determined by the Wheaton Board. *Id.* The *Olson* court rejected this contention, relying on its prior

decision in *Hahn v. Police Pension Fund of Woodstock*, 138 Ill. App. 3d 206, 210 (1985), that "the

date of suspension of duty or retirement referred to in section 3-114.1 was for the purposes of

determining the amount of a disability pension and the fact of disability; it does not establish the

date upon which pension payments must commence." *Olson*, 153 Ill. App. 3d at 600. The *Olson*

court found that the plaintiff continued to receive "full pay" until November 10, 1985, and his

pension commenced the next day. *Id.* The court determined that section 3-114.1 should not be

interpreted to permit a plaintiff to receive both salary and pension for the period from August 1,

1985, through November 10, 1985. *Id.*

¶ 46    The *Olson* decision does not clarify the manner of the plaintiff's "full pay" that he received

between August 1, 1985, and November 11, 1985. The decision also does not establish how the

Board should determine the commencement date of pension payments; it simply found that section

3-114.1 does not establish the date. However, the *Olson* court did find that a plaintiff should not

be permitted to receive both a salary and pension under section 3-114.1. The court seemingly took

no issue with the Wheaton Board's "rule" that the effective date of a disability pension should be

the latter of the date the applicant is removed from the payroll or the date the application was received by the board.

¶ 47 A fair reading of *Olson* would suggest that a plaintiff's disability pension benefit should begin after they stop receiving "full pay." See *Nowak*, 2011 IL 111838 (plaintiff's disability pension payments commenced after he stopped receiving his "full salary"). In this case, Mr. Vokac received his full salary under the Act until May 15, 2021. The Board determined that his disability pension benefit should commence the next day. Although Mr. Vokac received TTD benefits after his Act benefits expired, TTD benefits are paid at a rate of 66 2/3% of the employee's average weekly wage, not "full pay." 820 ILCS 305/8(b) (West 2020). *Olson*, *Nowak*, and the other decisions noted above that have considered the commencement date of disability pension payments illustrate that the Board's decision as to when pension payments should begin is a matter within the Board's discretion and its decision is entitled to deference. Accordingly, we find that the Board's decision awarding Mr. Vokac a line-of-duty disability pension based on his salary attached to rank on May 16, 2021, with payments commencing on that date, was not clearly erroneous.

¶ 48                          D. The Board Did Not Err in Rejecting
                               Mr. Vokac's Request to Purchase
                               Creditable Service

¶ 49 Finally, we will address Mr. Vokac's contention that he was entitled to purchase "creditable service" for the period of May 15, 2021, to January 19, 2022. Section 3-110(a) of the Pension Code defines "Creditable service" as:

> "the time served by a police officer as a member of a regularly constituted police force of a municipality. In computing creditable service furloughs without pay exceeding 30 days shall not be counted, but all leaves of absence for illness or accident, regardless of length,

and all periods of disability retirement for which a police officer has received no disability pension payments under this Article shall be counted." 40 ILCS 5/3-110(a) (West 2020).

The Board rejected Mr. Vokac's request to "buyback" creditable service, finding that he was not furloughed and did not receive a leave of absence. The Board found that Mr. Vokac could receive creditable service for that period only if he was not receiving disability pension payments. The Board observed, however, that it had awarded him disability pension payments retroactive to May 16, 2021. The Board therefore found that Mr. Vokac was not entitled to receive creditable service for that period.

¶ 50    First, we agree with the Board that "[t]he plain meaning of section 3-110 is that a pensioned period of disability is not creditable service." *Kuhlmann v. Board of Trustees of the Police Pension Fund of Maywood*, 106 Ill. App. 3d 603, 609 (1982). In this case, Mr. Vokac received and accepted disability pension payments beginning on May 16, 2021. Secondly, Mr. Vokac fails to identify any authority—and our research has revealed none—supporting his entitlement to purchase creditable service for the purposes of increasing his pensionable salary. Absent any relevant authority, the Board could not have erred in refusing to award him such relief. See *Covello v. Village of Schaumburg Firefighters' Pension Fund*, 2018 IL App (1st) 172350, ¶¶ 51-52 (finding that the pension board could not have abused its discretion in rejecting the plaintiff firefighter's contention that he was entitled to purchase creditable service to fully vest his pension where he failed to identify any authority to support his entitlement to do so).

¶ 51    We recognize that Mr. Vokac sent checks to the Board while he was receiving TTD benefits, which he asserted represented his pension contributions for that period, making it eligible for "buyback." Mr. Vokac acknowledges, however, that those checks were never cashed. Furthermore, the Pension Code explicitly contemplates that an officer receiving disability pension

benefits may simultaneously be receiving benefits under the Workers' Compensation Act for the same injury and provides for an offset of disability pension benefits during that period. 40 ILCS 5/3-114.5 (West 2020). Despite this, there is no provision in the Pension Code indicating that this period may qualify as creditable service to supersede the plain meaning of section 3-110. Accordingly, we find that the Board did not err in determining that plaintiff was suspended from duty of May 16, 2021, that his disability pension payments should commence on that date, and in awarding him a line-of-duty disability pension benefit based on a salary of $129,244.07.

¶ 52                                III CONCLUSION

¶ 53    For the reasons stated, we affirm the judgment of the circuit court and the Board's decision and order.

¶ 54    Board decision affirmed.

¶ 55    Circuit court judgment affirmed.

---

### *Vokac v. Berwyn Police Pension Fund*, 2025 IL App (1st) 240338

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, Nos. 22-CH-09755, 22-CH-08001; the Hon. Neil H. Cohen, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Barry A. Ketter, of Barry A. Ketter, P.C., of Addison, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Richard J. Reimer and Vincent C. Mancini, of Reimer Dobrovolny & LaBardi PC, of Hinsdale, for appellees. |

---